BURNS *v.* STATE

No. 40141         May 28, 1956         87 So. 2d 681

*W. W. Pierce,* Jackson, for appellant.

*John H. Price, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant Lawrence E. Burns was convicted in the Circuit Court of the First Judicial District of Hinds County of the murder of John R. Murrett. On this appeal he does not contend that the verdict is against the great weight of the evidence or that he was entitled to a peremptory instruction. ■■ ■ The evidence was ample to support the conviction. The ten assignments of error are directed toward two instructions granted the State and eight instructions refused appellant by the trial court. In order to consider them, a statement of the facts is necessary.

I.

Murrett, thirty years of age, was killed in a Jackson hotel in the early morning of Sunday, July 24, 1955. He was a resident of Jackson and was employed as an interior decorator. Burns and his joint indictee, Warren Koenig (there was a severance), testified for the defense. They were arrested in September 1955 at the Keesler Air Force Base in Biloxi. They were enlisted soldiers or airmen with the U. S. Army Air Force. After his arrest, Burns signed a voluntary, written confession in which he admitted that he and Koenig had assaulted, beat up and tied Murrett in the hotel room, and had gagged him by putting a pillowcase in his mouth and tying on top of it a sheet to hold it in place. Defendant claimed this was done in order to prevent a homosexual assault by Murrett upon him. Dr. Forrest G. Bratley made an

autopsy of Murrett's body. In his opinion the cause of Murrett's death was strangulation or suffocation from lack of oxygen in the body. He said that if there were between one-third to one-half of a pillowcase in the deceased's mouth it would press the base of the tongue against the back of the throat and shut off the air passage, thus resulting in death. Detective Paul H. Stribling of the Jackson Police Department testified that he arrived at the hotel shortly after the body was discovered Sunday morning, around 10 A.M., and that the ''biggest part of the pillowcase was really crammed down his throat''; that more than half of the pillowcase was down Murrett's throat, ''very little of it was sticking out''. Burns said it was down halfway.

Burns and three of his airmen friends, LaRocco, Dougherty and Fernandez drove to Jackson on Friday afternoon, July 22, 1955, on a weekend pass, in Burns' automobile. They registed under fictitious names in a small hotel, and on Saturday wandered around town visiting various stores and a few girls. That afternoon they met Warren J. Koenig, also an airman at Keesler Air Force Base. Around 11:30 Saturday night these five men went to the Wagon Wheel, a place serving beer and juke box music to its customers. While there, Murrett approached them and struck up a conversation with Koenig and Burns. They told him that they were going to sleep in their car that night because they had to save their money for some dates on Sunday. Murrett said he would put up two of them, Burns and Koenig, for the night. Burns so advised the other three airmen, but told them to wait downstairs in the car to make sure that Murrett's invitation was legitimate.

LaRocco, Fernandez and Dougherty went downstairs first, and shortly thereafter Murrett, Burns and Koenig came out of the Wagon Wheel, got a cup of coffee at a cafe, and went to another hotel on Capitol Street. As they were going in the hotel, Burns waved at the other

three airmen, thus telling them in effect that they could go ahead and sleep in his car that night, that he and Koenig were staying with Murrett. Murrett did not have enough money to pay for the room at this hotel, so they walked down the street to the hotel where the crime was committed. Murrett went in to register for a single room, in order to avoid the higher rate for three men. He then went outside, and Burns and Koenig followed him back into the hotel and up to Room 709. The three men undressed down to their shorts. Burns and Koenig said that when Murrett put his wallet, watch and other belongings on the dresser, he told them that when they left the next morning they could have the $4.50 in his possession, since he knew they were broke and he could get some more the next day.

Koenig got in the bed first and was followed by Murret. Burns said that he intended to sleep in the large chair in the room to avoid crowding, but upon Murrett's insistence he also got in the bed on the outside, with Murrett in the middle. After about five minutes Burns said that Murrett put his arm over upon him, and got up on him attempting to assault him in a homosexual manner; that he struggled and could not get aloose; and that he called Koenig to help him. Koenig sat up and hit Murrett with his fist. Murrett and Burns fell off of the bed, and after some struggle Burns grabbed Murrett from the rear around the chest and pinned his arms to his side. Koenig hit Murrett a number of times with his fist and beat him up terribly, breaking his nose, hitting him in the abdomen sufficiently hard to cause a hemorrhage in the abdominal wall, knocking a tooth out, lacerating the face, scalp, nose and jaw.

Koenig beat Murrett with his fists until he finally knocked him out, unconscious. Koenig hit Murrett once or twice after he went limp to be sure he was out. They then proceeded to tie him up while he was unconscious and unable to do anything. Burns took the lamp cord and

tied his hands behind his back, and then used Murrett's belt to tie his feet. Both Koenig and Burns admitted that Murrett was unconscious when they tied up and gagged him. They took a pillowcase and jammed at least half or more of it into Murrett's mouth and down his throat, and using a sheet, tied it around his neck and over his mouth to hold the gag in place. Koenig said that they gagged Murrett at a time when Murrett was not doing anything and could not do anything, being unconscious, because they were afraid that he would cry out and cause a commotion. The defendant admitted that after he had tied Murrett's hands and feet, he and Koenig put the pillowcase in his mouth and tied the sheet around his face. They had knocked Murrett unconscious and he was helpless. Neither Koenig nor Burns knew which one put the gag in Murrett's mouth, but they were acting together. Burns admitted that the pillowcase appeared to be halfway or plenty of it in Murrett's mouth.

After this, Burns and Koenig washed the blood off of themselves and dressed, Koenig took Murrett's watch, and defendant took his money, $4.50. Burns said that he knew they had done wrong by beating and tying the man up, and that they just wanted to get out of there. Although he and Koenig stated that Murrett told them he was going to give them the money the next morning, and therefore they took it, Burns testified that he "just took" the money, although he did not think it was his. He thought it was Murrett's "in a way". Avoiding the elevator they walked seven flights down the steps and left the hotel.

Just before defendant and Koenig left the hotel room, Murrett apparently began to regain consciousness and was moving about slightly. After leaving, they registered in a small hotel that night and met the other three airmen the next morning, Sunday. That afternoon they had dates with some girls and returned at night to the

Keesler base. Burns spent the money which he took from Murrett. Koenig wore Murrett's watch regularly, until he left it with a repairman on the Air Base shortly before his arrest. The officers found a claim ticket in his possession and repossessed the watch. Neither defendant nor Koenig made any report to the authorities or anyone else about the incident. They told the other three airmen about it. They said that they did not know that Murrett was dead until they saw it in a newspaper several days later. They instructed the other three to keep quiet and not to say anything about the incident. It was only through painstaking and intelligent investigative work that the members of the detective bureau of the Jackson Police Department were able finally to apprehend the defendant and Koenig.

Burns admitted that they tied and gagged Murrett after they had knocked him out; and that the deceased did not actually succeed in making homosexual advances toward him. In response to the inquiry of whether it was his intention to get the man's money "one way or the other when you went into the room", Burns said "I had rather not answer that question". Burns was asked whether Murrett attempted to hit either one of them, and he answered, "he struggled was all".

## II.

The State was granted the following instruction:

"The Court instructs the jury for the State that if you believe from the evidence in this case beyond every reasonable doubt that Lawrence E. Burns and Warren G. Koenig, acting together wilfully, feloniously, and violently made an assault upon and did rob John R. Murrett of the sum of $4.50, or any other amount, and a Bulova watch, of any value whatever, by taking the same from the person or presence of said John R. Murrett, by violence to the person of said John R. Murrett and against his will, then the defendant Lawrence E.

Burns is guilty of robbery. And the court further instructs the jury for the State that murder is the killing of a human being without authority of law, by any means or any manner (1) when done with the deliberate design to effect the death of the person killed, or (2) without such design when done in the perpetration of the felony of robbery; and if you believe from the evidence in this case beyond every reasonable doubt that John R. Murrett died as a result of being gagged with a pillowcase by Lawrence E. Burns or Warren G. Koenig, acting together, either with the formed purpose to kill him or without such intent, and that he was so gagged at a time when they were committing the crime of robbery, then you the jury should find the defendant guilty of murder, and it is immaterial which of the two put the pillowcase in the mouth of said John R. Murrett; and it is immaterial whether they intended to cause the death of said John R. Murrett by putting the pillowcase in his mouth.''

Appellant contends that this instruction was error, because it ignored his right to use reasonably necessary means to defend himself in order to prevent Murrett from committing a felony upon appellant's person. However, the State was not obligated to raise the issue of self-defense. The instruction did not preclude such defense. It was amply presented to the jury by other instructions granted defendant, and also by the State's instruction next quoted, all of which authorized the jury to consider whether defendant's acts were done to prevent the commission of a felony upon him which was then and there immediate and impending. Moreover, according to the testimony of defendant and Koenig, they stuffed the pillowcase in Murrett's mouth and gagged him at a time when he was unconscious and making no attack whatever upon either of them. The alleged attempt of Murrett to commit the crime of unnatural intercourse upon Burns was admittedly foiled sometime be-

fore Murrett was tied up and gagged. See Code of 1942, Sections 2413, 2011, 2017.

Code Section 2218 (e) and (f) requires that a justifiable homicide must have been committed while the person was in the process of resisting and attempt to commit a felony upon him, or in the lawful defense of one's own person, where there was reasonable grounds to apprehend a design to commit a felony, and "there shall be imminent danger of such design being accomplished". According to defendant's own testimony, Murrett was unconscious and helpless when he was tied and gagged. The State's theory, with which the jury apparently agreed, was that Murrett was murdered by Burns while the latter was engaged in the commission of the crime of robbery. Code Section 2215. This instruction is correct.

■■■ The State's instruction No. 2 provided: "The Court charges the jury for the State that even though you believe that the deceased John Murrett was attempting to have unnatural intercourse with the defendant Lawrence Burns, if you believe from the evidence in this case beyond every reasonable doubt that the defendant committed the acts that caused the death of John Murrett at a time when the danger of accomplishment of the crime of unnatural intercourse was over and at a time when such danger was not imminent or impending, and it was not reasonably necessary to do such acts to prevent the commission of such crime by John Murrett, and if you further believe from the evidence in this case beyond every reasonable doubt that the defendant Lawrence Burns committed the felony of robbery upon John Murrett at a time when he, Lawrence Burns, committed the acts that caused the death of John Murrett, then the defendant is guilty of murder and you should so find."

This also was proper. It advanced the State's theory of the case, assuming the truth of defendant's testimony about Murrett's attempted homosexual assault upon him.

Burns himself admitted that the danger of accomplishment of the crime of unnatural intercourse was over and there was no imminent danger to him when he tied and gagged Murrett. The instruction did not assume that the defendant robbed the deceased, but left it up to the jury to so find, although Burns admitted that he had taken the money, and that Koenig took the watch. Defendant admitted that he did not think that this money was his, but thought it was Murrett's. Moreover, there is no claim that Murrett gave them the watch, admittedly taken by Koenig and Burns as joint actors.

██ █ Defendant was given twelve instructions which amply set forth his theory of the case. But he complains about the trial court refusing him eight others. One of them told the jury to find the defendant not guilty if it believed that when the pillowcase was stuffed in deceased's mouth the defendant's mind was "in such a condition as to be incapable of forming a design to kill the deceased or deliberating coolly". This was properly refused because there is no evidence in the record which would support a finding that defendant at the time this occurred was so mentally deranged that he did not know the difference between right and wrong.

██ █ Defendant's refused instructions, discussed in Points 4, 7 and 8 of his brief, dealt with the burden of proof and the question of reasonable doubt. The jury was amply instructed on these matters in other instructions granted defendant and the State, so there was no reversible error in refusing these. One instruction, which told the jury that if it believed from the evidence that there is a probability that the defendant did not wilfully kill Murrett, then there is a reasonable doubt as to his killing, should have been given. McNair v. State, 61 So. 2d 338 (Miss. 1952). However, other instructions granted defendant on the issue of reasonable doubt amply covered this matter, so this was not reversible error.

██ █ There was no error in the refusal of the request-

ed two-theory instruction, since it is not proper except where a case rests entirely upon circumstantial evidence. 1 Alexander, Jury Instructions (1953) Sec. 172.

██ ██ The trial court properly refused the following instruction: ''The court instructs the jury for the defendant that if you believe from the evidence that the deceased, John R. Murrett, put $4.50, in cash money, on the dresser while the deceased and the defendant were undressing for bed, and at the same time told the defendant that he was giving the money to defendant and another and that they could have the money the next morning and that the defendant relied upon this statement by the deceased as a gift and took the money as he left the room, then the defendant committed no unlawful act in taking the money under the circumstances.''

Appellant admitted that, when he took the money, he did not think it belonged to him but felt it belonged to Murrett. Moreover, the instruction would have been misleading to the jury. Even if defendant's stated admission were ignored, still it is undisputed that defendant and Koenig took Murrett's watch without his consent. In so doing, they were joint actors in committing upon him the robbery of the watch.

Nor was there error in the trial court's refusal of the instructions dealt with in Points 6 and 10 of appellant's brief. Two other instructions granted defendant submitted to the jury his theory that the homicide was justifiable because he was acting in resistance of an immediate and impending felony upon his person. According to the testimony of defendant and Koenig, they did not tie up and gag Murrett at a time when there was any immediate and impending attempted felony upon defendant's person, and defendant was not then resisting such an act of Murrett. So these instructions were not based upon the evidence. When Murrett was tied and gagged, he was unconscious and helpless. There was then no

imminent threat or danger to Burns. He is guilty of an atrocious crime and must pay the penalty for it.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Gillespie, JJ.,* concur.