336 So.2d 1317 (1976)
Bill HANNAH
v.
STATE of Mississippi.
No. 49035.
Supreme Court of Mississippi.
September 14, 1976.
Rehearing Denied October 5, 1976.
*1319 Dannye L. Hunter, Jerry L. Bustin, Forest, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and BROOM, JJ.
PATTERSON, Presiding Justice, for the Court:
Bill Hannah, a Justice of the Peace of Scott County, was indicted for converting $8,823.50, the property of Scott County, in his possession by virtue of his office, to his own use, contrary to Mississippi Code Annotated section 97-11-25 (1972). He was convicted and sentenced to seven years in the penitentiary, with four years suspended, and two years on probation. He appeals and assigns thirty-one points for reversal.
The first is that the trial court erred in overruling the demurrer to the indictment. The demurrer's theory is that the indictment was brought under Section 97-11-25 (a felony) entitled "Embezzlement  officers, trustees and public employees converting property to own use," a general statute stating offenses relating to public officials, rather than Section 9-11-19 (a misdemeanor) directed to the duties of justices of the peace in accounting for fines and penalties. It is urged the two statutes apply to the same subject matter and because Section 9-11-19 specifically refers to justices of the peace, it prevails over Section 97-11-25, the statute relating to public officers generally.
Section 9-11-19 creates and defines the legal obligation of each justice of the peace to account for, report, and to pay the fines and penalties received into the county treasury. Section 97-11-25 speaks to the unlawful conversion of monies or property which comes into the hands of a public officer by virtue of his office. The first is directed to the duties of a justice of the peace, its violation being a misfeasance in office, a misdemeanor. The latter is not directed to duties of office, but to the wrongful and unlawful conversion of public funds to personal use by a state officer.
While it is true that Section 97-11-25 applies to public officials generally and that Section 9-11-19 refers specifically to the duties of a justice of the peace, there nevertheless remain substantive differences between the two  violation of the method of performing a duty on the one hand as opposed to the unlawful conversion of public funds on the other  precluding control of the general statute by the more specific one, considering their different subjects. Bence v. State, 240 So.2d 630 (Miss. 1970); McCaffrey's Food Market, Inc. v. Mississippi Milk Comm'n., 227 So.2d 459 (Miss. 1969); *1320 and Sanders v. State, 141 Miss. 289, 105 So. 523 (1925). We conclude that the court properly overruled the demurrer to the indictment.
The next argument is that the trial court erred in not quashing the indictment. Hannah asserts he was immune from the prosecution because the indictment was based upon personal records unlawfully taken from him and because he testified before the grand jury that returned the writ. We are of the opinion the motion to quash was correctly overruled because the evidence discloses the records were not presented to the grand jury as contended and were therefore not the basis of its indictment. Moreover, we adhere to the rule that "the law does not permit the court to go behind an indictment to inquire into evidence considered by the Grand Jury to determine whether it was in whole or part competent and legal." Davis v. State, 255 So.2d 916 (Miss. 1971); State v. Matthews, 218 So.2d 743 (Miss. 1969).
On March 4, 1974, Hannah appeared before the grand jury and evidently responded to questions by it concerning the duties of his office. It is uncontradicted that the vote to return the indictment was on the afternoon of March 3, the day prior to his grand jury appearance. Since this is true, his testimony on March 4 was not used against him in violation of constitutional prohibitions. We conclude the motion to quash the indictment on this contention was properly overruled.
Hannah argues under the foregoing point that the district and county attorneys were present when the grand jury voted to return the indictment against him and that he was prejudiced thereby. This contention points out a repeating occurrence provoking justified criticism of our judicial system since it suggests undue influence and unfairness by the presence of prosecuting attorneys, advocates of the state, when critical votes are made affecting the well-being and liberty of those not similarly represented. Once again, we concur with that stated in Grantham v. State, 214 Miss. 756, 59 So.2d 344 (1952), as follows:
While this Court in prior decisions has said that it is the better practice for the district attorney to absent himself from the grand jury room while the grand jurors are voting on an indictment, the Court has nevertheless held that the presence of the district attorney at such time in the grand jury room is only an irregularity and constitutes no reversible error in the absence of proof of injury or prejudice resulting therefrom to the defendant... . (214 Miss. at 759, 59 So.2d at 346)
We conclude the irregularity does not constitute reversible error. We nevertheless feel constrained to state that it is not the better practice and policy requires that it not be done. The difficulty of an indictee proving prejudice emanating from the secrecies of a grand jury room makes this so. The suspicion of undue influence should be avoided by prosecuting attorneys removing themselves from the grand jurors' presence when votes for indictment are cast.
It is urged that error occurred by the court's suggesting to the state's attorney that an objection should be made to the testimony being offered. The sheriff was being interrogated in support of defendant's motion to quash the indictment because the grand jury's actions were not secret. He was questioned concerning the apparent suicide of another justice of the peace who had also been indicted and particularly whether he had knowledge of a suicide note that might have been left by the decedent. The court inquired as to the relevancy of the testimony to which defense counsel replied that the testimony would substantiate the fact that the grand jury's actions were not secret.
The court then inquired of the district attorney whether he had objection to the question and upon receiving an affirmative reply sustained the objection because it had no materiality. We are of the opinion the court's query was not a suggestion to object, but rather was an inquiry only, and moreover, a valid one because it does appear that the question was irrelevant to the *1321 issue. A trial judge has the responsibility, within judicial discretion, of confining the testimony during trial to the issues before it. We observe no prejudice to the appellant from the court's inquiry. Indeed, we discern no proffer of testimony to preserve the point had the witness been permitted to testify. Jones v. State, 306 So.2d 57 (Miss. 1975).
It is suggested by the next two points that the court erred in permitting an amendment to the indictment and while doing so, compounded the error by commenting upon the evidence. The comment occurred at the time the district attorney moved the court to amend the indictment by changing the amount allegedly embezzled from $8,823.50 to $1,176.50. When defense counsel was asked whether he had any objection, the following response was made:
If it please the Court, the Defendant would object to the Indictment being amended. The Defendant has the right and is prepared to answer the charges and the evidence presented to the Grand Jury, and this Court has a right to see it. There have been volumes of publicity about this case, and we have spent hours and hours preparing to defend the indictment served against him, and at this time if the State can't prove its case, it ought to be dismissed.
The Court responded:
The objection is over-ruled. The amendment is allowed. We could stay here a month. The defendant can't complain about reducing the amount to $1,176.50. Draw an Order and let the Order be entered immediately.
Thereupon counsel requested the jury to retire and when it did so, objected to the court's comment. He cites Mississippi Code Annotated section 99-17-35 (1972) in part as follows: "The judge in any criminal cause, shall not sum up or comment on the testimony, or charge the jury as to the weight of the evidence, ..." and numerous cases of this Court condemning comment upon the evidence by a trial judge, an example of which is Stallworth v. State, 310 So.2d 900 (Miss. 1975).
There can be no doubt the statute and cases enjoin comment by a judge upon the evidence because the very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury. The question presently reduces itself to whether or not the judge's statement was a comment upon the evidence. We think the remarks of the judge were responsive to the terms of the objection that there had been volumes of publicity about the case and "hours and hours" of preparation to defend against the indictment and therefore the comment was evoked by the objection. Moreover, a fair reading of the colloquy, in our opinion, does not portray comment likely to prejudice the jury against Hannah, but is rather an explanation by the court for its ruling upon the amendment. This is permissible. Ratliff v. State, 313 So.2d 386 (Miss. 1975); Bumpus v. State, 166 Miss. 276, 144 So. 897 (1932).
There follows argument that the amendment was improper. We are not persuaded because the amendment was of form and not substance. It is authorized by Mississippi Code Annotated section 99-17-13 (1972). And see Sanders v. State, 313 So.2d 398 (Miss. 1975).
The probability that Mississippi Code Annotated section 13-5-1 (competent jurors), et seq. (1972) will permit a constitutional trespass on Hannah's rights is assigned for reversal. The reason asserted is that he "could have and may have" been forced to trial absent a juror or jurors from his district. The premise for the probability arises from the Sixth Amendment to the Constitution of the United States in part as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, ..." (Emphasis added.) We think the probability of error is insufficient for reversal. The burden of demonstrating that the jury selection system was discriminatory, thereby denying due process or equal protection of the law was upon Hannah. Reed *1322 v. State, 199 So.2d 803 (Miss. 1967). No effort was made to comply with this burden, requiring this argument to be rejected.
A reversal is next sought upon the basis of Peters v. State, 314 So.2d 724 (Miss. 1975), which holds that a trial judge has the exercise of judicial discretion in the manner the voir dire examination of a jury panel is conducted. Hannah contends that interrogating forty-nine prospective jurors distributed among five panels cause so much confusion that he was handicapped in his voir dire examination. The court offered all the time Hannah desired for the preliminary examination and advised that a full panel of twelve jurors accepted by the state would be submitted to the defendant for further questioning, if desired, before final acceptance for jury service. No proof was offered to support the allegations of prejudice and we conclude there was no abuse of discretion by the court in the method of jury selection.
Daisy Holmes, a state witness, testified that she paid $150 to Policeman Gibson for the release of Sammy Holmes who was detained in the Scott County Jail for drunken driving. When both the state and the defendant had concluded their interrogation of the witness, the court asked the following question: "Daisy how did you know the amount required to get your husband out of jail was $150?" She replied: "Maxie Powell called Judge Hannah for me and he told him." Hannah objected to this testimony and without ruling upon it the court stated: "All right, stand aside." He later sustained the objection and instructed the jury to disregard Daisy's answer because it was hearsay.
The unusual argument is now made that this question by the trial judge was an attempt to assist the district attorney and the county attorney, the judge's son, in the state's prosecution. In our opinion the argument is specious. It is generally acknowledged that a trial judge has the right to interrogate witnesses, within sound judicial discretion, to develop the truths of an issue. Jones v. State, 223 Miss. 812, 79 So.2d 273 (1955); Breland v. State, 180 Miss. 830, 178 So. 817 (1937); and Griffin v. State, 171 Miss. 70, 156 So. 652 (1934). We have studiously reviewed the evidence and must conclude that the argument is simply not supported by fact.
During the course of the trial several checks which had been used to make partial payments on fines were referred to by the state. The defendant objected for the reason the checks had not been timely produced in response to defendant's application for the production of evidence authorized by Mississippi Code Annotated section 11-1-51 (1972). The motion had been sustained by the court and it is true that the checks were not produced in accord with the order. However, the record reveals the district attorney had only received some of the checks "fifteen minutes" prior to their being offered into evidence and others the day before. Although it was disputed that shortly after they were received by the district attorney and prior to their introduction appellant was offered an opportunity to examine them, the trial court allowed the checks into evidence. From these circumstances we are of the opinion the court did not abuse its discretion in permitting the documents into evidence because we are unable to state the defendant was prejudiced thereby. Bright v. State, 293 So.2d 818 (Miss. 1974); and Armstrong v. State, 214 So.2d 589 (Miss. 1969).
There follows other argument that the court's statement concerning Exhibit 14 to the testimony of state's witness Pettus was prejudicial as a comment upon the evidence. It was admitted into evidence over objection, the court stating: "Well it is a duplicate receipt of a receipt that is already in evidence, but I will permit the duplicate receipt to be admitted also. Let it be marked and admitted." We again think the remarks were in explanation of the court's ruling. Ratliff, supra. We adhere to the philosophy stated in Bumpus v. State, 166 Miss. 276, 144 So. 897 (1932):
It is true that "an overspeaking judge is no well-tuned cymbal," but, in language somewhat similar to that of Mr. Justice McReynolds, in Berger v. U.S., *1323 255 U.S. 22, 43, 41 S.Ct. 230, 65 L.Ed. 481, 489, . .. neither is an aphonic dummy a becoming receptacle for judicial power." (166 Miss. at 281-282, 144 So. at 899)
We think there was no prejudice resulting from the judge's remark and observe there is no way a judge can conduct a trial in silence nor do we think it can be logically argued that his every word is a comment upon the evidence.
The trial of the defendant, a justice of the peace, created much public interest. During its course the district attorney permitted himself to be interviewed by a television journalist outside the front door of the courtroom. The interview was filmed and later portrayed to the public during a "TV" newscast at 6:00 and 10:00 p.m. The city of Forest where the trial was being conducted was within the area covered by the newscast. There is testimony from the bailiff for the female jurors that the motel rooms in which these jurors were staying had television sets in them. There is no testimony that any juror observed the interview with the district attorney on television. Since this is so, we conclude that Hannah was not prejudiced by the interview. We do state, however, that such action by a state's attorney is the most logical and certain way to secure a reversal in a criminal case presently known to the bench and bar.
In the same vein, complaint is made that some members of the jury had access to the May 28, 1975, issue of the Scott County Times, a newspaper which carried a front page story of the trial. The testimony indicates that it was thought by a bailiff that one of the female jurors had gotten a copy of the paper. The bailiff for the male jurors did not know whether or not the male jurors had one of the papers. On cross-examination it was shown that no one knew whether the juror with the paper had read the article or not. The court in overruling the motion for a mistrial found there was no proof that any juror except the one had access to the Scott County Times and no proof that this juror had read the article. He was of the opinion that exposure to the newspaper by this juror did not impinge upon the right of the defendant to a fair trial. We concur and are of the further opinion, from the newspaper article before us, that it accurately portrayed the facts of the trial with which the jurors were already familiar and contained no prejudicial statement against either the state or the defendant. In Odom v. State, 172 Miss. 687, 161 So. 141 (1935), we stated:
The paper contained no prejudicial statement against either appellant or Ritchie or the Federation of Labor. There was nothing in it calculated to bias the mind of the reading public for either one side or the other; it merely stated facts known to everyone. The evidence on the motion failed to show that the juror, Rimmer, read the account of this proceeding in the paper. (172 Miss. at 696, 161 So. at 142)
The court's refusal to grant Hannah several instructions and granting of others to the state are designated as error. We have considered each within the context of the argument directed to it and conclude there was no error either in the refusal to grant certain instructions and the granting of others. For brevity we do not elaborate.
We are requested through sincere argument to find the verdict of the jury not substantiated by the evidence, the thesis being that fines imposed by Hannah would be paid to Hannah or his wife and at the end of the month payment was made to the county at the time of their settlement report. This procedure, it is urged, was normally followed, but when an individual could not pay his fine, partial payments were accepted, thus leading to a discrepancy in the records rather than an actual shortage of funds. The record is replete with numerous instances of unofficial receipts being issued for a definitive sum and thereafter an official receipt issued in a lesser amount, the difference between the two not being reported. Abbreviated examples follow.
Westbery: Westbery issued a check for $77 on May 26, 1973, payable to Hannah to *1324 satisfy a fine. An unofficial receipt for $77 was signed by Glaze and on May 30, 1973, the check was deposited to Hannah's bank account. Hannah's justice docket reflects that Westbery pleaded guilty to the charges of driving under the influence and having no driver's license for which he was fined a total of $67 by Receipt Book No. 7, Receipt No. 4024. Hannah paid $67 to the county treasury.
Holmes: In September 1974 Holmes was jailed for driving while under the influence. His wife paid his $150 fine in cash and received a receipt for this amount from Donald Gibson (policeman) which states on its face: "By order of Judge Bill Hannah." Gibson kept the money locked in his box at the police department for several days before it was turned over to Hannah. The official receipt, Book No. 15, Receipt No. 3778, was for $110 and that amount was reflected in Hannah's settlement report.
No good purpose would be served by detailing the numerous similar incidents of irregularity and petty thievery. There was ample evidence to support the verdict and we cannot conclude it was against the overwhelming weight of the evidence.
The record before us reflects the unlawful conversion of public funds by a public officer to his own use in derogation of law and there being no prejudicial error therein, the cause will be affirmed.
AFFIRMED.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.
LEE, J., took no part.