346 So.2d 927 (1977)
Charles Ray JOHNSON
v.
STATE of Mississippi.
No. 49703.
Supreme Court of Mississippi.
June 1, 1977.
*928 Paul Kelly Loyacono, Loyacono & Field, Oscar P. LaBarre, Vicksburg, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Special Asst. Atty. Gen., Jackson, for appellee.
Before INZER, SMITH and BROOM, JJ.
INZER, Presiding Justice, for the Court:
Appellant Charles Ray Johnson appeals from the Circuit Court of Warren County wherein he was indicted for murder but was convicted of manslaughter and sentenced to serve a term of eighteen (18) years in the Mississippi State Penitentiary.
Appellant was indicted for the January 1, 1976, murder of Norman Williams, his fifty-four-year-old cousin and owner of a small grocery store known as "Norman's Grocery." Eighteen-year-old Johnson admitted killing Williams by strangulation, but claims self-defense in that Williams was attempting to commit an act of sodomy upon his person.
The deceased's body was discovered the next morning by a bakery routeman while making his usual delivery. Sheriff Carl Barrett was the first officer to arrive at the scene of the crime. He observed the unclothed decedent lying on his back with his head a little off the edge of the crumpled bed. An inspection of the grocery store area adjacent to the living quarters of the deceased revealed that the locks to the cash register were missing and the drawer was open. No money was found in the store at that time. Williams' automobile was also missing from the premises, but was quickly located in front of a local motel. Johnson was arrested and, when asked why he had killed Norman Williams, the appellant replied that the decedent had tried to have sexual relations with him so he choked Williams until he stopped moving. After Johnson's arrest, some sixteen dollars in pennies was found beneath the mattress in the motel room. The appellant also produced the car keys to Williams' automobile.
Dr. Leo J. Scanlon, pathologist, performed the autopsy on the decedent. Dr. Scanlon testified that the victim's larynx had been totally crushed which caused death by instantaneous asphyxiation. The decedent would have lost consciousness approximately thirty to forty seconds prior to the fatal crushing and, in the interval between the crushing and the blackout, he would have been physically weakened and unable to resist an attack. The blood alcohol level of the victim was .145 at the time of autopsy.
Johnson took the stand in his own behalf and his version of the facts on the night in question are as follows. He testified that on the evening of January 1, 1976, he telephoned Williams to inquire about his Christmas, and Williams invited Johnson to come out and have a drink with him. The decedent *929 offered to drive out and get Johnson, which he did around 8:30 or 9:00 p.m. They watched a football game on television and drank a large quantity of bourbon and beer. Williams showed no signs of intoxication, but appellant stated that he himself was intoxicated. Johnson began feeling dizzy and nauseous and got into bed, after first removing his pants and shirt. Thereafter, he passed out. The next thing Johnson remembered is that Williams was attempting to commit an unnatural act upon his person. He became frightened, knocked Williams away, and a struggle ensued between the two men. Johnson then stated that he choked Williams "until he quit fighting me. He quit fighting me and I let him alone." He then ran into the store, stole the bag of pennies, fled in the decedent's automobile.
The state introduced evidence to contradict the testimony of the defendant. A fifteen-year-old customer of Norman's Grocery testified that on the evening of January 1, 1976, at approximately 10:30 or 11:00 he went to the grocery to make several small purchases. Because the store was closed, he went around to the back to the living quarters and Williams let him in. This witness observed Williams sitting on the bed, fully clothed, reading a newspaper and watching television. The news was just going off the air. He went into the grocery part of the building, made his purchases, talked to Williams for a few minutes and then left. He neither observed nor heard anyone else in either part of the building. The next morning he learned that Williams was dead.
Argument is made by appellant that the Weathersby Rule should be the controlling law in the case at bar. This rule, as set out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), states as follows:
It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge... . (165 Miss. at 209, 147 So. at 482)
This rule simply makes it mandatory for the court and jury to accept the testimony of the defendant who testifies that the defendant acted in self-defense where there is no testimony to contradict his version of the homicide, and where there are no physical facts or evidentiary circumstances on which a contrary finding could be reasonably predicated. Gordan v. State, 258 So.2d 752 (Miss. 1972).
On the other hand, if there are circumstances shown in the evidence which materially contradict the defendant's version of self-defense, the jury is not required to accept his version, but may consider his version of self-defense along with the conflicting evidence in determining the guilt or innocence of the defendant. Carroll v. State, 196 So.2d 878 (Miss. 1967).
As we view the record, there are numerous contradictions between the testimony of the State's witnesses and the testimony of appellant, as well as physical facts which would preclude the application of the Weathersby Rule. Additionally, in viewing the scene of the crime from the exhibit photographs, such evidence tends to negate appellant's version of the affray  that a violent death struggle took place in the room prior to the homicide. Moreover, the actions of the appellant after the crime were not consistent with an innocent man. Johnson ransacked the grocery store, stole all available money, fled in decedent's automobile, and never reported the incident to the authorities. In McElwee v. State, 255 So.2d 669 (Miss. 1971), this Court stated the following:
It is true that appellant was the only eye witness to the shooting, but his own voluntary statement to the sheriff and the investigator to some extent contradicted his testimony given at the trial. These contradictions together with the fact that appellant immediately left the scene and never reported the incident to the sheriff or any one else, were sufficient to take *930 the case out of the Weathersby rule. (255 So.2d at 671)
We therefore, hold that Johnson's guilt or innocence was a matter of fact and a question for the jury.
Next, appellant contends that to be sodomized unwillingly is to "suffer great bodily harm" and, therefore, the killing was within the meaning of the justifiable homicide statute. § 97-3-15, Miss. Code Ann. (1972). Argument by appellant is not persuasive, but even if it were, the question of the reasonableness of the force used to repel the sexual attack then becomes a jury issue. See Burns v. State, 228 Miss. 254, 87 So.2d 681 (1956). In the case at bar, the jury undoubtedly passed upon this issue and reduced the murder indictment to a conviction of manslaughter.
Appellant contends that it was reversible error for the sheriff to judge for the jury the actions of the defendant/appellant. The colloquy complained of took place during direct examination of Sheriff Paul Barrett when the witness was reiterating the conversation which took place between himself and Johnson immediately after the arrest. Any alleged error was cured with the granting of Instruction D-2 which instructed the jury that the appellant was to be judged in the light of the surrounding circumstances then apparent to him.
Next appellant cites three instances wherein the trial judge allegedly assisted the prosecution to his prejudice, none of which has any merit. The rule is aptly stated in Hannah v. State, 336 So.2d 1317 (Miss. 1976), "There is no way a judge can conduct a trial in silence, nor do we think it can be logically argued that his every word is a comment on the evidence." (336 So.2d at 1323.)
Argument is made that during the trial, certain events brought to light an intentional breach of the court's order to produce and that the action of the prosecution and its witnesses in withholding several photographs was a violation of their oath as prosecutors. Since the photographs were found during trial and introduced into evidence, we are of the opinion that appellant suffered no prejudice.
Lastly, appellant contends that the trial court erred in allowing impeachment of the defendant on a nonmaterial issue. Mr. W.M. Connerly was called as a rebuttal witness by the prosecution to refute Johnson's testimony that he had not seen Williams during the holidays until the day of the homicide. Over objection, Connerly testified that he saw appellant at Norman's Grocery on December 26, 1975, and that appellant informed him that he was spending a few days with his cousin. Connerly's testimony was offered to rebut Johnson's statement and we cannot say that the trial judge abused his discretion in admitting this testimony. Complaint is also made that this witness remained in the courtroom during trial. We have repeatedly held that the enforcement of the rule is a procedural matter solely within the discretion of the judge. Butler v. State, 320 So.2d 786 (Miss. 1975).
After a careful examination of the record, we find no reversible error and for the reasons stated this case is affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.