# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00758-COA

**JUAN ADAME A/K/A JUAN RAUL ADAME**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2023 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | ROBERT R. MORRIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/28/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     A DeSoto County Circuit Court jury convicted Juan Adame of one count of fondling a nine-year-old girl, Amy.[1]  The trial court sentenced Adame to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC).  The trial court denied Adame's post-trial motion for an acquittal or a new trial.  Adame appeals, asserting that the trial court erred by giving a jury instruction concerning the uncorroborated testimony of a sex-crime victim. Finding no abuse of discretion, we affirm Adame's conviction and sentence for the reasons addressed below.

---

[1] We use pseudonyms for the child and her father to protect the child's identity.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

¶2. A DeSoto County grand jury returned a one-count indictment against Adame for fondling a child under the age of sixteen years pursuant to Mississippi Code Annotated section 97-5-23 (Rev. 2020). Adame's trial took place on May 17, 2023. The witnesses testifying for the State included Deborah Bright, Amy's grandmother; Keeley Armstrong, Amy's stepmother; John, Amy's father; Detective Titus Hawkins of the Southaven Police Department; Lindsey Nails, a forensic investigator with Healing Hearts Child Advocacy Center; and Amy. Adame testified in his own defense.

¶3. Adame lived with John and Armstrong in Southaven, Mississippi. Amy's grandmother testified that Amy lived with her much of the time but that Amy visited her father on some weekends. On November 25, 2021, Amy was visiting her father for the Thanksgiving holiday.

¶4. Armstrong testified that she went to bed early that evening; Adame and John stayed outside playing guitars and "having some drinks." John said he was drinking beer that evening and that Adame was drinking liquor. Amy was with them. Around midnight, the three of them went inside the house. John testified that Amy was not ready to go to bed. She wanted to watch a movie. John had to work the next morning, so he went to bed. Adame told him that he did not have to work in the morning, so he would stay up and watch Amy.

¶5. Amy testified about an "incident" that happened between her and Adame that evening. She was nine years old at the time.[2] Everyone in the house had gone to bed except Amy and

---

[2] Amy was ten years old when she testified at trial.

Adame. They had stayed up to watch a movie in the living room. Amy testified that while they were alone in the living room, Adame seemed "half asleep" and was mumbling. He touched her "front butt." Amy said she was "really scared" and immediately went into the bathroom. She waited until Adame fell asleep and then went out to get her cell phone. It was on the couch next to Adame. Amy called her grandmother and told her what happened.

¶6.     Bright testified that she received a voicemail from Amy around midnight saying that Adame "had touched her inappropriately and she was very scared and she didn't know what to do." Bright called Amy back and asked her what had happened. Amy told her that Adame had touched her "on [her] bottom." Bright asked her, "Like, in the front or in the back?" Amy told her in the front.

¶7.     Bright told Amy to tell either her father or Armstrong. Armstrong testified that about this time, she had gotten up to use the bathroom and saw Amy, who looked "very shaken up." Armstrong asked Amy what was wrong, and Amy told her, "[Adame] touched me inappropriately." Armstrong testified, "And I said, What do you mean inappropriately? And she said, 'Right here,' and she grabbed her vagina." Armstrong and Amy woke up John. Amy told him what happened. Armstrong called the police.

¶8.     John testified that Amy was "crying hysterically" and told him that Adame had touched her between the legs. In the time before the police arrived, he went to the living room to confront Adame, who was "passed out" on the couch. John woke up Adame, and they went to the garage where John continued to ask Adame what had happened. Adame told him "he didn't know what [Amy] was talking about." The police arrived. Adame left the

3

premises. Armstrong went to the police station and was interviewed by Detective Hawkins.

¶9. Nails performed a forensic interview of Amy. Nails testified that in that interview, Amy disclosed sexual abuse. Detective Hawkins observed the interview and confirmed that Amy had made this disclosure.

¶10. At the close of the State's case, the defense moved for a directed verdict, which the trial court denied.

¶11. Adame testified in his own defense. He testified that by the time he, John, and Amy went back inside the house (about midnight), he was "very drunk. I'm a fifth of Fireball [(whiskey)] into it." Adame did not remember talking to Amy at all after John went to bed. He and Amy started watching a movie and then he fell asleep. According to Adame, he was awakened by John screaming with a pistol in his face. When asked whether he touched Amy inappropriately, Adame testified, "Not to my knowledge. I really hope not."

¶12. The defense rested.

¶13. During the jury instructions conference, Adame's defense counsel objected to the State's proposed jury instruction S-3 regarding the uncorroborated testimony of the victim. After hearing each side's argument, the trial court overruled defense counsel's objection and granted the State's proposed jury instruction S-3. When the trial court judge subsequently instructed the jury, he gave this instruction as Jury Instruction 10. For ease of reference, we will refer to it as Jury Instruction 10 in this opinion. This instruction forms the basis of Adame's sole issue on appeal and will be discussed in detail below.

¶14. After deliberation, the jury found Adame guilty of one count of fondling. The trial

4

court sentenced him to serve fifteen years in the custody of the MDOC. Adame moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. In his post-trial motion Adame asserted, among other arguments, that the trial court erred in giving Jury Instruction 10. The trial court denied Adame's post-trial motion.

¶15. Adame appeals solely on the issue of whether the trial court erroneously granted Jury Instruction 10.

## STANDARD OF REVIEW

¶16. We "review[] the grant or denial of proposed jury instructions for an abuse of discretion." *Pitts v. State*, 291 So. 3d 751, 755 (¶17) (Miss. 2020). Additionally, we "review the jury instructions as a whole," *Parks v. State*, 228 So. 3d 853, 871 (¶70) (Miss. Ct. App. 2017), and "[i]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Pitts*, 291 So. 3d at 755 (¶17).

## DISCUSSION

¶17. Adame asserts that the trial court erroneously gave Jury Instruction 10, which provided:

> The Court instructs the jury that, under Mississippi law, the unsupported word of the victim of a sex crime is enough to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence.

¶18. In considering a challenge to the granting of a jury instruction on appeal, we "do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable

rules of law, no error results." *Id.*; *accord Barnes v. State*, 348 So. 3d 974, 982-83 (¶12) (Miss. Ct. App. 2022), *cert. denied*, No. 2021-CT-00404-COA, 2022 WL 16640817 (Miss. Oct. 13, 2022); *Parks*, 228 So. 3d at 871 (¶70). With this standard of review in mind, we find no abuse of discretion in the trial court's granting of Jury Instruction 10. We begin our analysis with a discussion of the trial court's rulings on this issue at trial.

¶19.    During the jury instructions conference, defense counsel acknowledged that the instruction "is part of Mississippi law" but argued that "the unsupported word of anyone is enough for a guilty verdict as long as it's proved beyond a reasonable doubt. I just think [the instruction is] unnecessary, and it unnecessarily bolsters the State's case." The trial court overruled defense counsel's objection and granted the instruction.

¶20.    In so ruling, the trial court specifically noted that the supreme court in *Pitts*, 291 So. 3d at 757-58 (¶34), and the Court of Appeals in cases cited in *Pitts*, found that the jury instruction or the "practically identical jury instruction" "reflect[ed] an accurate statement of the law[,] . . . was not a comment on the weight of the evidence[,] and did not tell the jury how to weigh the credibility of the victim's testimony." *Id.* at (¶¶34-35). The trial court further pointed out that the appellate courts in these opinions also "noted the other instructions informed the jurors that they must find the defendant was guilty beyond a reasonable doubt." Based upon these cases, the trial court found: "In this particular case before the [c]ourt today, the other jury instructions do cover that . . . the jury must find that the State has proven the defendant guilty beyond a reasonable doubt. Therefore, this instruction will be given over objection."

6

¶21. Following his conviction and sentencing, Adame moved for judgment notwithstanding the verdict or, alternatively, a new trial. Adame asserted, in relevant part, that the trial court erred in giving Jury Instruction 10 because it was "misleading and unconstitutionally shift[ed] the burden of proof to the defendant." After conducting a hearing on Adame's post-trial motion, and upon considering the arguments of counsel and the applicable law, the trial court denied Adame's motion. With respect to Adame's assertions concerning Jury Instruction 10, the trial court ruled, "As to [the granting of] Jury Instruction 10, the [c]ourt would just cite, again, *Pitts*[,] 291 So. 3d [at 757-58 (¶34)]."

¶22. On appeal, Adame, citing *Pitts*, 291 So. 3d at 758 (¶34), concedes that "the language of Instruction 10 has been approved by the Mississippi Supreme Court." Nevertheless, Adame asserts that Jury Instruction 10 "impermissibly commented on the weight of evidence, was argumentative, and deprived [Adame] of fair and objective consideration of the evidence by the jury."

¶23. We recognize, as Adame points out, that Mississippi Code Annotated section 99-17-35 (Rev. 2020) prohibits a trial judge from "sum[ming] up or comment[ing] on the testimony, or charg[ing] the jury as to the weight of evidence." This "statute . . . enjoin[s] comment by a judge upon the evidence because the very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury." *Hannah v. State*, 336 So. 2d 1317, 1321 (Miss. 1976).

¶24. The statute further provides, however, that the trial court judge, "at the request of either party[,] . . . *shall instruct the jury upon the principles of law applicable to the case.*"

7

Miss. Code Ann. § 99-17-35 (emphasis added). We find that Jury Instruction 10 does no more than follow this mandate. As such, and in accordance with supreme court and this Court's precedent, we find no abuse of discretion in the trial court's giving Jury Instruction 10 in this case.

¶25. In *Pitts*, for example, the defendant was convicted of one count of touching a child for lustful purposes. *Pitts*, 291 So. 3d at 753 (¶1). He asserted on appeal that the trial court erred when it instructed the jury that the "uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." *Id.* at 757 (¶30). Much like Adame, the defendant argued that the instruction "constituted an improper comment on the evidence, was argumentative, and it encouraged circumvention of the state's obligation to prove guilt beyond a reasonable doubt." *Id.* at (¶32).

¶26. The supreme court rejected the defendant's argument for two reasons. First, the court found that the instruction "reflects an accurate statement of the law," noting that it followed supreme court precedent "that 'the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence.'" *Id.* at 757-58 (¶34) (quoting *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006)).

¶27. Second, the supreme court found that the instruction "did not constitute an improper comment on the weight of the evidence . . . [or] instruct the jury on how to weigh [the victim's] testimony." *Id.* at 758 (¶36). "Rather, [the instruction] properly allowed the jury to determine what weight and credibility to give [the victim's] testimony." *Id.* In reaching

8

this conclusion, the supreme court also reviewed the instructions as a whole, noting that "[t]he jury was . . . clearly instructed on the elements of [the offense] and the State's obligation to prove [the defendant] guilty beyond a reasonable doubt." *Id.* at (¶38).

¶28. More recently, in *Barnes*, this Court found no error in the trial court giving a jury instruction *identical* to Jury Instruction 10 in this case. *Barnes*, 348 So. 3d at 983 (¶14). Like the supreme court in *Pitts*, this Court reasoned that the instruction "correctly states the law as set forth in *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006)." *Id.*

¶29. We also recognized in *Barnes* that "this Court must consider all the instructions given to the jury in order to determine whether the jury was properly instructed." *Id.* On that point, we recognized that another jury instruction "clearly state[d] that the jurors 'are the sole and exclusive judges of the credibility of each of the witnesses.'" *Id.* Thus, the jury was specifically instructed that it had the "responsibility to weigh the credibility of each witness[,]" even though the challenged jury instruction did not include a similar directive. *Id.* Accordingly, "we [found] no error in the trial court's giving of the [challenged jury instruction]." *Id.*

¶30. Likewise, in *Bliss v. State*, 326 So. 3d 1000 (Miss. Ct. App. 2021), this Court found no error in the trial court giving an instruction concerning the uncorroborated testimony of a sex crime victim where other jury instructions informed the jury that it was the "sole judge[] of the facts in [the] case" and that it held the "exclusive province" to weigh the evidence and determine "what credibility to assign the testimony and supporting evidence of each witness in [the] case." *Id.* at 1005 (¶20). The jury was also instructed on "the

9

elements required for sexual battery and the State's burden to prove every element beyond a reasonable doubt." *Id.*; *see also Parks*, 228 So. 3d at 871 (¶71) (finding no abuse of discretion in the trial court giving an uncorroborated-testimony-of-a-sex-crime-victim instruction when other instructions "informed the jury that they were to consider the evidence to determine whether the State proved that [the defendant] committed the crimes charged beyond a reasonable doubt").

¶31.    Like the appellate courts in these cases, we find that Jury Instruction 10 was not argumentative, nor did it constitute an improper comment on the weight of the evidence. First, Jury Instruction 10 reflects "an accurate statement of the law," *Pitts*, 291 So. 3d at 758 (¶34), as set forth in *Miley*, 935 So. 2d at 1001 (¶10).  Indeed, Jury Instruction 10 tracks this law verbatim.  *See Harris v. State*, 378 So. 3d 971, 981 (¶38) (Miss. Ct. App. 2024); *Clements v. State*, 237 So. 3d 175, 181 (¶39) (Miss. Ct. App. 2017).

¶32.    Second, as we did in *Barnes*, we bear in mind that "this Court must consider all the instructions given to the jury in order to determine whether the jury was properly instructed." *Barnes*, 348 So. 3d at 983 (¶14).  We find that the jury was properly and thoroughly instructed.  Reviewing the jury instructions as a whole in this case, we find that the jury was plainly informed that it alone had the "exclusive domain" to weigh the evidence and judge the credibility of the witnesses.  *See Pitts*, 291 So. 3d at 758 (¶36); *Barnes*, 348 So. 3d at 983 (¶14); *Bliss*, 326 So. 3d at 1005 (¶20).  Jury Instruction 1 read, in relevant part:

> [I]t is your exclusive domain to determine the facts in this case and to consider and weigh the evidence for that purpose . . . .  You are the sole judges of facts. Your duty is to determine what weight and what credibility will be given the testimony and supporting evidence of each witness in this case.

10

¶33.     Further, like the supreme court in *Pitts*, we likewise find that "[t]he jury was also clearly instructed on the elements of [fondling] and the State's obligation to prove [Adame] guilty beyond a reasonable doubt." *Pitts*, 291 So. 3d at 758 (¶38).   In particular, Jury Instruction 4 informed the jury that "the defendant[] at the start of the trial is presumed to be innocent" and "is not required to prove his[] innocence or to put in any evidence at all upon the subject."   Continuing, this instruction provided that "[t]his presumption of innocence stays with the defendant throughout the trial of the case until the evidence convinces each and every one of you of the defendant's guilt beyond a reasonable doubt."   Jury Instruction 8 explained each element the State was required to prove beyond a reasonable doubt under the fondling statute.

¶34.     And just as the supreme court found in *Pitts*, we find that the jury in this case "was also instructed that if the State failed to prove [Adame's] guilt beyond a reasonable doubt, . . . [it] had the sworn duty to find [Adame] not guilty." *Pitts*, 291 So. 3d at 758 (¶38).   The elements instruction (Jury Instruction 8) provided: "If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty."   Additionally, Jury Instruction 3 read, in relevant part: "The Court instructs you that if the jury, from all the evidence or lack of evidence in this case, has a reasonable doubt in their minds as to the guilt of the defendant, then it is your sworn duty to find the defendant not guilty of any charge."

¶35.     Adame also generally asserts that "jurors should not be told how to view certain types of evidence," citing *Nevels v. State*, 325 So. 3d 627 (Miss. 2021), for this proposition. *Nevels*

concerned a defendant's contention that the trial court erred by refusing his proposed circumstantial-evidence jury instruction. *Id.* at 630 (¶10). The supreme court rejected the defendant's contention, overruling prior caselaw that required a special circumstantial evidence instruction. *Id.* at 634 (¶20). There is no issue regarding circumstantial evidence jury instructions in this case. We fail to see how the specific holding in *Nevels* applies here.

¶36. We do find relevant, however, the supreme court's general directive in *Nevels* that the jury "should consider and weigh *all* of the evidence presented. And '[i]f the jury is convinced beyond a reasonable doubt, we can require no more.'" *Id.* (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). These guidelines were followed here. As we discussed in detail above, the jury was explicitly instructed that it "should consider and weigh all of the evidence presented" and that it must find "beyond a reasonable doubt" that the State proved every element of fondling in the statute. We therefore find Adame's contention on this point unpersuasive.

¶37. In sum, for all the reasons addressed above, we find that Adame's sole assignment of error on appeal is without merit. Accordingly, we affirm Adame's conviction and sentence.

¶38. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. ST. PÉ, J., NOT PARTICIPATING.**