595 So.2d 430 (1992)
Wanda EARLEY
v.
STATE of Mississippi.
No. 89-KA-0267.
Supreme Court of Mississippi.
February 19, 1992.
Christopher A. Tabb, Brandon, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
*431 PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, a jury at the Rankin County Circuit Court found 28-year-old Wanda Earley guilty of sexually battering her nine-year-old son over a three-year period. The judge imposed a sentence of fifteen years' imprisonment. Wanda appealed and presented three issues regarding a juror's reading of a newspaper report of the case, prosecutor's comments during closing argument, and counsel's alleged ineffective assistance. This Court affirms the conviction and sentence.

II.

A. Issue # 1: Whether a Mistrial Should Have Been Granted After Some Jurors Read a Newspaper Account of the Case?

1.
The trial in this case transpired over a two-day period. On the second day of the trial  October 5, 1988  The Clarion-Ledger distributed the morning edition which contained the following front-page headline: "Rankin County 9-year-old tells jury of incest with his mother." The accompanying article recounted testimony and other evidence presented in the jury's presence on October 4  the first day of the trial. This article continued on the back page. The back page contained information disclosed during proceedings held outside the jury's presence.
That morning (October 5), the trial judge addressed the jury regarding this article:
Yesterday, when we adjourned, I neglected when I was cautioning you not to discuss the case among yourselves or with anyone else, I neglected to remind you not to read anything about the case, if there was anything about it, not to watch anything about the case on television, ... or listen to it on the radio... . Ordinarily, I do that. For some reason, I did not yesterday. One reason is that I had no idea that the case would receive as extensive news coverage as it did... . So, in view of the coverage..., it would be my duty to ask each of you whether or not you read or heard or saw anything about the case in the news last night or this morning and whether or not anything that you may have read or seen or heard would have any influence or any bearing on your decision in this case... .
Vol. II, at 125-27. The judge polled the jurors  four of whom responded that they had "seen," "glanced at," "skimmed," or "read" the newspaper article. Id. at 127-32. The judge then interviewed these four jurors  "individually and alone." Id. at 141-48. Juror Pittman admitted: (1) that he had read the headline and "practically all" of the front page; (2) that he did not read beyond that because he "was in a hurry"; and (3) that "nothing" he had read "would influence [his] decision in this case." Id. at 141. Juror Myers admitted that he had read only the headline and had not discussed the contents of the article with anyone. Id. at 142. Juror Massey admitted that he had "[o]pened the paper, saw the headlines, and started to skim the front [page], decided that [he] didn't need to do this and closed it up." He added that he had not discussed the article with anyone and that the portion of the article which he had skimmed "would not affect [his] opinion in the case." Id. at 143. Finally, Juror West admitted that he had read the entire article and that he had not discussed it with any of the other jurors. Id. at 144.
Wanda moved for a mistrial  which the judge denied:
Based on my interrogations to the jury, both as to the entire panel this morning and as to the four jurors who indicated that they had read all or, had read some or all of The Clarion-Ledger article this morning, it is my opinion that there's nothing in the article which the jurors have not heard from the witness stand, except for that paragraph on the [back] page which indicates that out of the presence of the jury some comments were made in regard to the Defendant's sexual involvement with her younger son, James. That information has been excluded from consideration by the jury *432 pursuant to the Defendant's motion in limine. The only juror who indicated that he read that part of the article was ... West [who] assured the Court that that would not influence [him], and I have no reason to doubt it; however, he was exposed to information which was excluded from consideration by the jury, so I have, I will deny the motion for mistrial; however, I will excuse Mr. West as a juror in this case and substitute ... Myers, the alternate juror, in his place.
Vol. II, at 147-48.
Later, the judge again admonished the jury:
Ladies and gentlemen, both sides have now rested which means that you have heard all of the evidence in the case... . [D]o not discuss the case even among yourselves. Do not discuss it with anyone else. Do not permit anyone to discuss the case with you, attempt to do so, or to discuss it with others in your presence. Please do not read anything about the case in the newspaper... .
Id. at 188-89.
Wanda now contends that the "only fair and proper action of the trial court would have been to grant [her] motion ... for a mistrial." Appellant's Brief at 20.

2.
This Court's opinion in Hannah v. State is dispositive of this issue. 336 So.2d 1317 (Miss. 1976). In Hannah, the defendant moved for a mistrial on the basis that at least one of the jurors had gained access to a local newspaper containing a front-page article about the ongoing trial. Scott County Circuit Court Judge Roy Noble Lee investigated the matter and found "there was no proof that any juror except the one had access [to the newspaper containing the article] and no proof that this juror had read the article." Judge Lee denied the motion after concluding "[h]e was of the opinion that exposure to the [article] by this juror did not impinge upon the right of the defendant to a fair trial."[1] 336 So.2d at 1323. On appeal, this Court affirmed. Id.

3.
In the case sub judice, neither Wanda nor the State disputes the fact that: (1) the front page of The Clarion-Ledger contained only information which the jury had previously received, and (2) the back page contained information which had been withheld from the jury. The dispute thus focuses on whether the jurors read the back page.
Like Hannah, the record in the case sub judice contains absolutely no proof of Wanda's contention that the jurors read or may have read the back page, and the one juror who did read the entire article was promptly dismissed. Thus, in the absence of proof and under authority of Hannah, this Court holds that the judge's decision did not constitute an abuse of discretion.

4.

B. Issue 2: Whether a Mistrial Should Have Been Granted in View of the Prosecutor's Allegedly-Improper Comments?

1.
During closing argument, defense counsel commented on Wanda's claim that her husband, Michael Earley, coerced her into sexually battering her son:
We're talking about a man who [Wanda's] living with, married to, that's obviously a perverted man, a man that is aroused by unnatural sex acts, a man who is sexually aroused by beating her and beating these children, who is forceably having sex with her, against her will... .
Vol. II, at 205.
The State rebutted by thrice referring to Wanda as a pervert. The first reference entailed the following comment:

*433 Michael Earley has been called a pervert and he may be. Wanda Earley, you're a pervert too.
Id. at 208. The second reference entailed the following:
You've got a woman who came up here and cried like a baby on direct examination. Sympathy was bleeding down her cheeks, and yet when I started asking her questions, she cut it off. Because she hadn't rehearsed that. And you saw a woman with a cold look on her face, a woman who stared blankly and a woman who is a pervert.
Id. at 209. Finally, the State commented:
Mrs. Earley, you are a pervert. You are also guilty of sexual battery to your son, and John is the victim here and let's not forget who the victim is.
Id. at 211.
Wanda now contends that these references to her as a "pervert" were improper and should result in a reversal.

2.
This Court rejects Wanda's contention on procedural grounds. Restated, Wanda is procedurally barred from asserting her contention because she wholly failed to object to any of the three references at the trial level. Accord May v. State, 569 So.2d 1188, 1190 (Miss. 1990); Dunaway v. State, 551 So.2d 162, 164 (Miss. 1989); Lanier v. State, 533 So.2d 473, 483 (Miss. 1988); Marks v. State, 532 So.2d 976, 984 (Miss. 1988); Lockett v. State, 517 So.2d 1317, 1333 (Miss. 1987); Burney v. State, 515 So.2d 1154, 1157 (Miss. 1987); Johnson v. State, 477 So.2d 196, 208-08 (Miss. 1985); Wilks v. State, 408 So.2d 68, 69 (Miss. 1981).
In sum, this Court affirms on this issue.

C. Issue # 3: Whether Wanda's Counsel Provided Ineffective Assistance?

1.
Wanda contends that she received ineffective assistance of counsel in view of the following:
a) Counsel for the defendant should have changed venue to avoid the coverage in the local newspapers and no questions were asked of the jury to determine what specific knowledge they had of this incident.
b) No Motion to Suppress was ever filed concerning the alleged written and oral statements of the defendant and they were allowed into evidence without a proper foundation of all the officers present.
c) No expert witnesses were offered in this cause to collaborate [sic] the testimony of the defendant concerning the duress she was undergoing at the time of the alleged incidents.
d) No objection was made to the comments of the [State] in closing arguments in calling the defendant a pervert.
Appellant's Brief at 21.

2.
The law recited in the recent case of Barnes v. State is instructive. 577 So.2d 840, 841-43 (Miss. 1991). To determine whether Wanda received ineffective assistance of counsel, Wanda must present sufficient evidence to meet the two-pronged Strickland test. Id. at 841 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). That is, Wanda must prove that, under the totality of the circumstances, prejudice resulted from a deficiency in her counsel's performance. Id. (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir.1983); Wiley v. State, 517 So.2d 1373, 1378 (Miss. 1987)).

3.
Application of law leads this Court to conclude that Wanda clearly failed to meet the Strickland test. Wanda simply cited four "actions and inactions" of her trial counsel without explaining or justifying her contention that they should be characterized as deficient and prejudicial. See Appellant's Brief at 21-22. Without more, this Court cannot conclude that Wanda *434 proved that she received ineffective assistance of counsel.
In sum, Wanda's contentions fail to meet the Strickland test and, therefore, this Court affirms on this issue.

III. CONCLUSION
Based on the foregoing analysis, this Court affirms the conviction and sentence.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The Sixth Amendment, in part, guarantees the criminal defendant the right to a fair trial by an impartial jury. See Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (applying the sixth amendment right to states through the fourteenth amendment).