745 So.2d 850 (1998)
Willis C. BOOKER a/k/a Willie C. Booker, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00327 COA.
Court of Appeals of Mississippi.
December 8, 1998.
Rehearing Denied March 9, 1999.
Certiorari Denied June 3, 1999.
*851 Ottis B. Crocker, Jr., Bruce, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
*852 Before McMILLIN, P.J., and COLEMAN and SOUTHWICK, JJ.
McMILLIN, P.J., for the Court:
¶ 1. This case is an appeal from a criminal conviction returned by a jury in the Circuit Court of Calhoun County. Willis Booker stands convicted of the murder of James Avant and has appealed his conviction to this Court, raising three issues that he claims require his conviction to be reversed. We disagree and affirm the conviction.

I.

The Facts
¶ 2. Evidence presented by the State indicated that Booker and Avant had a heated face-to-face confrontation on the evening of Avant's death. Cooler heads had prevailed and Avant had turned and begun to walk away when he was attacked from the rear by Booker, who had produced a knife that had been concealed on his person. Booker inflicted a mortal wound with the knife on Avant before he could be restrained. Booker, in his defense, claimed that Avant had long been engaged in a practice of threatening, taunting and tormenting Booker, causing him to fear for his personal safety. Booker claimed that this fear had led him to carry the knife at all times. He said that Avant had physically attacked him and that he had drawn the knife to use in self-defense.

II.

The First Issue:

The Admission of Evidence of Booker's Prior Criminal Conviction
¶ 3. During pre-trial discovery, defense counsel requested the State to furnish "a copy of the criminal record of the Defendant, if the State of Mississippi proposes to use any such record for the purpose of impeachment." The State responded "none."
¶ 4. After the State rested, Booker elected to testify in his own defense. During direct examination, his attorney asked, "Willie, what crimes have you ever been convicted of?" Booker replied, "None, really." A probation officer who happened to be observing the trial knew that Booker had a 1991 conviction in Calhoun County for aggravated assault and he informed the prosecuting attorney of this fact. Outside the presence of the jury, the prosecuting attorney notified the court of this information and indicated his intention to cross-examine Booker concerning that conviction. Defense counsel objected, claiming that the failure to disclose the conviction was a discovery violation that could only be cured by the exclusion of the evidence. Over defense counsel's objection, the trial court permitted the State to cross-examine Booker about his earlier conviction. Booker now claims that this was reversible error since this "ambush" by the State left his credibility in tatters.
¶ 5. We find this argument unpersuasive. In the first place, we find ourselves unsympathetic to the proposition that the State's failure to disclose a prior conviction grants a criminal defendant a license to blatantly lie to the jury on that issue without any adverse consequence. Certainly, based on the State's discovery response, Booker was free to take the stand and relate his version of the events surrounding Avant's death without concern that his credibility could be attacked by disclosure of a prior conviction that met the admissibility standard in Mississippi Rule of Evidence 609. However, rather than availing himself of the protective shield afforded him by the State's negative discovery response, Booker elected to rely on what he perceived to be the State's ignorance of a prior criminal conviction to affirmatively misrepresent his general character to the jury by claiming that he was a law-abiding citizen with no history of prior criminal activitya proposition that he had to know at the time was false. The rules of evidence and the rules regarding *853 criminal discovery, as they relate to impeaching a witness by use of prior criminal convictions, are designed to prevent trial by ambush and to permit a defendant to make an informed decision as to whether he will elect to testify in his defense. These rules are not designed to create traps that permit either party to perpetrate a fraud on the court and prevent the other party from bringing that fraud to the attention of the court, and we decline to construe the rules in a way that would produce such a result.
¶ 6. Additionally, it appears to this Court that Booker has simply read his discovery request and the State's response more broadly than is warranted. He asked for information on prior convictions only if the State intended to use them for Rule 609 impeachment. As the trial court observed, the State, in responding to such a request, couldand probably ought toconclude that a conviction for aggravated assault would not be admissible for impeachment purposes under Rule 609 and that, even though it was aware the conviction existed, it would not attempt to use it for impeachment. Thus, even had the prosecution team had actual knowledge of Booker's prior conviction when formulating the discovery responses, it would have been quite appropriate to respond as it did.
¶ 7. The question then becomes whether, since the conviction was not admissible for impeachment under Rule 609, the conviction was nevertheless admissible under some other theory. We conclude that it was admissible and that Booker opened the door to the evidence by his response to his attorney's question about other criminal convictions.
¶ 8. There is no doubt that Booker's attorney had the right to inquire of his client concerning prior criminal activity (or, more typically, the lack thereof) in an attempt to demonstrate to the jury the defendant's character as a peaceful and law-abiding citizen. See M.R.E. 404(a)(1); Rowe v. State, 562 So.2d 121, 123 (Miss. 1990). By making such an inquiry, however, the defense necessarily opened a door to the prosecution that, until then, had remained closed. Unless the defendant elects to put his character in issue, the State is not free to engage in a freewheeling assault on the defendant's good name. M.R.E. 404. However, once the defense makes the decision to put the defendant's character as a law-abiding citizen in issue, the State is permitted to "rebut the same...." M.R.E. 404(a)(1). This right to rebut evidence of character is spoken of in Rule 405(a), which states that, once the defendant puts his character in issue, "[o]n cross-examination, inquiry is allowable into relevant specific instances of conduct." M.R.E. 405(a). A prior conviction of aggravated assault would seem, beyond question, to be a specific instance of conduct relevant, not to impeach Booker's truth-telling propensities under Rule 609, but to rebut Booker's evidence indicating that he was a peaceable, law-abiding citizen. Thus, the evidence of this prior conviction which, on its face, would seem almost certainly inadmissible for Rule 609 impeachment purposes, became admissible once the defense elected to demonstrate Booker's pristine past. The fact that this effort did not succeed worked no improper prejudice to the defense.
¶ 9. Our remarks are not intended to cast doubt on the motives or the abilities of defense counsel. We are satisfied from our review of the record that the knowledge of the prior conviction and the inaccuracy of Booker's response to defense counsel's inquiry were the result of information possessed only by Booker and not by his attorney. We have no cause to believe and do not intend to suggest that defense counsel knowingly elicited a false answer from his client. Booker, on the other hand, was clearly aware of the prior conviction. When confronted with the fact, he attempted to justify his answer by claiming that he did not equate a guilty plea with a conviction. He was permitted to explain to the jury his reasoning in his answering as he did and the jury was vested with the *854 ultimate authority to decide what credibility it would ascribe to all aspects of Booker's testimony. We conclude, therefore, that there was no reversible error in permitting the State to introduce evidence of Booker's former conviction for assault once Booker elected to put his character as a law-abiding citizen in issue.

III.

The Second Issue: The Giving of a Limiting Instruction
¶ 10. On request of the State, the trial court instructed the jury that it could consider the evidence of Booker's former conviction for impeachment purposes only. Defense counsel objected "primarily because it's a violation of discovery." We take that to be, in essence, a renewal of the defendant's objection to the receipt of the evidence itselfa matter that was moot at the time the instruction was offered.
¶ 11. We are presented with something of a dilemma on these facts. We have concluded that the evidence was likely not admissible for general impeachment purposes under Rule 609, but that the evidence was admissible under another theory once the defendant elected to put his character as a law-abiding citizen in issue. The limiting instruction, however, informed the jury that it was not to consider the evidence for any purpose other than impeachment. Booker claims this to be reversible error.
¶ 12. While it may have been an erroneous instruction based on the notion that the evidence was not admissible for Rule 609 impeachment purposes, we do not find the error to be reversible. If anything, the limiting instruction appears to have worked in Booker's favor rather than to his prejudice. Evidence by a defendant that he is a law-abiding person goes directly to the question of guilt. It is circumstantial evidence that the defendant did not commit the crime. 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERRAL PRACTICE AND PROCEDURE § 5236 (1978). There is, according to the Wright & Graham text, no consensus as to whether the jury may consider evidence rebutting the defendant's character as substantive evidence of guilt. Id. There is no Mississippi authority on the point and we do not find it necessary to answer the question in this case. The limiting instruction, in all events, prevented the jury from considering the evidence as bearing directly on the question of guilt, which would appear to be the primary purpose of any limiting instruction in situations such as this. Depending on how Mississippi would come out on the question, Booker may not have been entitled to any limiting instruction. The fact that the instruction given may have, in the process of steering the jury away from considering the evidence as bearing directly on Booker's guilt, steered the jury in the wrong direction to some degree does not, in the opinion of this Court, work such a fundamental unfairness on the defendant as to deny him a fair trial.

IV.

Jury Instructions
¶ 13. Booker offered three jury instructions that were rejected by the trial court. Instruction D-12 would have informed the jury that, if Booker had good reason to apprehend a serious attack from Avant, he had the right to carry a concealed weapon, and the jury should, therefore, draw no adverse inferences from the fact that Booker was carrying a knife. D-13 was an accident instruction. Finally, D-14 asked the jurors to put themselves in Booker's place and judge his acts by the circumstances that existed at the time of the stabbing. Booker complains that the trial court erred in denying these jury instructions since they were supported by the evidence and were necessary to present his theory of the case.
¶ 14. In deciding whether the trial court committed reversible error in refusing *855 to grant a jury instruction, this Court examines the jury instructions as a whole. Coleman v. State, 697 So.2d 777, 782 (Miss.1997). We will not reverse if the instructions properly informed the jury of the applicable law and how the law should be applied to the facts of the case. Id. It is, of course, essential that the jury is instructed on the defense's theory of the case. Manuel v. State, 667 So.2d 590, 591 (Miss.1995). However, if an instruction requested by the defense incorrectly states the law, is fairly covered elsewhere in other instructions, or is without foundation in the evidence, it is not error for the trial court to refuse it. Heidel v. State, 587 So.2d 835, 842 (Miss.1991).

A.

Instruction D-12
¶ 15. Prior to the case of Ray v. State, it was unsettled under Mississippi law whether a defendant in a homicide case was entitled to have the jury instructed on his right to carry a concealed weapon if he reasonably anticipated a serious attack from an enemy. Ray v. State, 381 So.2d 1032, 1034-35 (Miss.1980). One line of cases held that the defendant was entitled to such an instruction. In Wood v. State, the Mississippi Supreme Court reversed because the trial court refused to instruct the jury on the defendant's right to carry a concealed weapon, saying "it was a matter of vital importance for the jury to understand that [the defendant] had a right to be armed because of threats made against him." Wood v. State, 165 Miss. 363, 374, 144 So. 545, 548 (1932).
¶ 16. The other line of cases held that the defendant was not, in every case, entitled to such an instruction based on the reasoning that it would be an improper comment on the evidence to instruct the jury on the point when the defendant was not on trial for carrying a concealed weapon. Ray, 381 So.2d at 1034-35. In Ray, the supreme court acknowledged the need to adopt one position or the other and held that "a defendant is entitled to such an instruction because it is important for a jury to understand that a defendant has a right to carry a concealed weapon under... circumstances" enumerated in section 97-37-9 of the Mississippi Code. Id. at 1035; Miss.Code Ann. § 97-37-9 (Rev. 1994). The statute includes the occasion where the defendant has been threatened and has "good and sufficient reason to apprehend a serious attack from an enemy." Miss.Code. Ann. § 97-37-9(a) (Rev. 1994). However, the Ray court stated that, before such an instruction was warranted, there must be evidence in the record demonstrating the existence and reasonableness of such an apprehension on the part of the defendant. Ray, 381 So.2d at 1035.
¶ 17. Booker testified on direct examination that he carried a knife on his person at all times because Avant had threatened to kill him. Booker also presented witnesses who testified that they had heard Avant threaten Booker's life. Based on the Ray case, this evidence would seem to require the instruction under the Ray decision. However, in the subsequent case of Duvall v. State, the supreme court held that "[i]n cases where the State makes no reference or intimation that the defendant did not have a right to carry the weapon," the judge is not required to grant such instruction. Duvall v. State, 634 So.2d 524, 526 (Miss.1994). In this case, the State did nothing to suggest that Booker's decision to arm himself was improper or in any way evidenced his intention to wilfully assault his victim. The only testimony initiated by the State concerning the knife came out during its cross-examination of Booker and consisted of an inquiry as to the knife's description and where Booker had obtained it. That did nothing to suggest anything inappropriate on the part of Booker in carrying the weapon. Therefore, we conclude that the trial court did not fatally err when it refused to grant Instruction D-12.
*856 ¶ 18. We note that the trial court refused D-12 based on the State's argument that Booker, as a convicted felon, was not legally entitled to carry a concealed weapon. That reasoning presents some difficulties that we need not explore in depth. The reasoning we have offered was a sufficient basis to refuse the instruction. We do not reverse where the trial court reaches the right result even when we conclude that this result was reached for the wrong reason. Carter v. State, 167 Miss. 331, 342, 145 So. 739, 741 (1933).

B.

Instruction D-13
¶ 19. Booker contends that the trial court should have granted D-13, an accident instruction, because it would have informed the jury on his theory of the case. We agree, as a general proposition, that a defendant is entitled to have the jury instructed on his theory of the case. That is not the case, however, if the record contains no evidence that would support the theory.
¶ 20. In this case, Booker never offered any evidence that would support the notion that he accidently stabbed Avant. The only defense urged by Booker at trial was that he stabbed Avant in self-defense. Booker testified that Avant "hit me in my chest and knocked me flat on my back; and I started trying to get up; and he started back toward me; and I reached back and got the knife; and I stuck him." Booker went on to testify that he stabbed Avant "to keep him off of me." The supreme court has held that "[w]here the only theory of defense was self-defense and the jury was properly instructed thereon, there was no requirement that the court instruct as to other possible theories." Tran v. State, 681 So.2d 514, 520 (Miss.1996). Instruction D-13 was without foundation in the evidence, therefore, we find that it was properly refused by the trial court.

C.

D-14
¶ 21. As his final assignment of error, Booker contends that the trial court erred in refusing instruction D-14, his instruction on self-defense. This instruction would have directed the jury that "in passing upon the guilt or innocence of Willis C. Booker [it] should not try him by the light of after-developed-events, nor hold him to the same cool and correct judgment which you are able to form sitting in the jury box as you are, but you should put yourself in his place and judge his acts by the facts and circumstances by which he was surrounded at the time of the difficulty." Booker asserts that it was error to refuse this instruction since it instructed the jury on his theory of the defense. The State argues that this instruction was properly refused because it is erroneous to instruct the jurors to put themselves in the place of a party. We disagree with the State's argument, but decline to find error in the trial court's ruling for other reasons.
¶ 22. In the 1900 case of Hood v. State, the Mississippi Supreme Court found it to be reversible error for the trial court to refuse an instruction suggesting the jury put itself into the defendant's shoes and consider the situation he faced at the time of the killing in deciding whether he was acting in justifiable self-defense. Hood v. State, 27 So. 643, 644 (Miss.1900). The court in that case was troubled by the fact that Hood had been tried jointly with another defendant and that much of the incriminating evidence introduced at trial would not have been admissible against Hood had he been tried separately. Id. There was, additionally, substantial evidence that the victim was "a bad and dangerous man ... reputed to carry a dirk and pistol all the time." Id. The court, commenting on "the very peculiar and extraordinary circumstances of this case," reversed Hood's conviction because of the trial court's failure to give the requested instructions. However, the decision is silent as to whether some other form of self-defense instruction may have been given. *857 In the 1979 case of Arrington v. State, the Mississippi Supreme Court was, once again, faced with the situation where the trial court had refused a self-defense instruction of a similar nature. Arrington v. State, 366 So.2d 246, 248 (Miss.1979). In Arrington, however, the court refused to reverse since the trial court had given a self-defense instruction in another form. Id. In that situation, the court concluded that the jury had been satisfactorily instructed on the law.
¶ 23. In the case now before us, the defendant was given a self-defense instruction besides the one now under consideration. On those facts, we decline to hold that the trial court erred when it refused an instruction that would essentially require them to mentally reenact the crime, placing themselves in the defendant's role, in order to determine whether Booker's apprehension of imminent harm and his reaction to that apprehension were reasonable. Such considerations appear better suited for summation than for the court's instruction on the law of murder and self-defense. We conclude that the jury was adequately instructed on the law in other instructions and that there are no "peculiar and extraordinary circumstances," as existed in the Hood case, that would make the denied instruction essential to the jury's understanding of the law pertaining to this case.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF CALHOUN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
BRIDGES, C.J., THOMAS, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.