CHANDLER, J., for the Court.
¶ 1. After a six-day trial in November 2003 in the Circuit Court of Walthall County, Willie A. Magee was convicted of rape and of burglary of a dwelling. The court sentenced Magee to serve thirty years for rape and to serve twenty-five years for burglary, to run consecutively, as a habitual offender, in the custody of the Mississippi Department of Corrections. Magee appeals, arguing that (1) the trial court erred in failing to grant a directed verdict as to rape and burglary, (2) the trial court erred by allowing testimony on Magee’s prior bad acts, (3) the court should have disqualified the district attorney, (4) the court should have excused a juror who read a newspaper article related to the case, (5) the trial court should have dismissed Magee’s indictment, (6) Magee’s sentence amounts to a life sentence and constitutes cruel and unusual punishment in violation of the Eighth Amendment, and (7) the trial court erred by admitting evidence of a conviction that was over ten years old.
¶ 2. Finding no error, we affirm.
FACTS
*177 ¶3. E.P.,[1] age eighty-two, owned and operated a business behind her residence in Tylertown, Mississippi. E.P. testified that, in the early morning hours of October 15, 2002, she was asleep in bed when she was awakened by someone forcefully placing a piece of cloth over her face. E.P. had difficulty breathing and told the attacker that there was money in the dresser by the bed. The attacker stated, “I didn’t come after your money, I came after you.” The attacker then ripped E.P.’s pajama top off, pulled down her pajama pants, and performed oral sex on E.P. The attacker placed a knife to E.P.’s ear and told her that he would cut her throat if she was not quiet. Then, the attacker had sexual intercourse with E.P. When the attacker was finished, he began scraping the knife tip up and down E.P.’s chest and stomach while he threatened to kill her. The attacker stated that he was not going to let E.P. see him so that he would not be sent back to prison. Then, the attacker asked E.P. where her money was. E.P. told him it was in the dresser near her bed. The attacker took a bank bag filled with cash from the dresser and departed. When E.P. heard the back door slam, she removed the cloth from her face and called 911.
¶ 4. Tylertown Police Officer Aubrey Hill was dispatched to E.P.’s residence just before 2:00 a.m. When Officer Hill arrived, he observed that E.P. was distraught and that she had injuries including bruising around her eyes, cuts on her nose, lip, and left hand, and long red lines on her stomach. E.P. told Officer Hill that she had been raped and that she had recognized the attacker’s voice as that of Willie Magee. Magee occasionally performed yard work for E.P. and had been released from prison in early 2002. E.P. testified that the bank bag contained between one and two hundred dollars in cash collected from her business.
¶ 5. In E.P.’s bedroom, Investigators Truett Simmons and Tony Rushing with the Walthall County Sheriffs Department recovered several buttons from E.P.’s pajama top as well as a pillow sham that had been placed over E.P.’s head. These items were on the bed. There were stains resembling blood on the pillow sham and bedsheet and a damp spot on the bedsheet. The pillow sham had been taken from a spare bedroom across from E.P.’s bedroom.
¶ 6. Investigator Simmons testified that he determined the attacker had entered E.P.’s house through a door off the carport which led into an interior apartment that was vacant and separate from E.P.’s living area. The apartment was divided from E.P.’s living area by a door which E.P. testified was kept locked. Deputy Simmons testified that, when he arrived, the interior door was ajar but the locking mechanism was in the locked position. Deputy Simmons observed and photographed fresh tool marks on the door latch. Deputy Simmons testified that he concluded that the interior door was opened by force.
¶7. E.P. was transported to Walthall County General Hospital where Dr. Renie Jordan examined her and performed a rape kit. Dr. Jordan testified that E.P. suffered vaginal cuts, bruising, and trauma, but that, due to E.P.’s age, she could have received such injuries from consensual sex. However, Dr. Jordan’s impression from the totality of the information before him was that E.P. had been raped.
¶ 8. The police obtained blood samples from four suspects, including Magee, whose sample was obtained pursuant to a warrant. Vaginal swabs from the rape kit were sent to the Mississippi Crime Labo *178 ratory, where they tested positive for the presence of semen. Deedra Hughes, a forensic biologist at the Mississippi Crime Laboratory, obtained DNA from each blood sample and compared the DNA from the samples with the DNA from the semen taken from E.P. Hughes testified that Ma-gee’s DNA sample matched the DNA from the semen taken from E.P.
¶ 9. Magee testified. Magee denied having raped E.P. and testified that he did not know how E.P. had been injured. Magee, age forty-six, maintained that he had been involved in a long-term sexual relationship with E.P., which had begun in 1978. Ma-gee indicated that the relationship was kept secret due to fear of community backlash because the relationship was interracial. He stated that E.P. was “like family” and that he visited E.P.’s home on a regular basis. He testified that, on the evening of October 14, he visited E.P. at her home and they engaged in consensual sex. Afterward, Magee asked E.P. to borrow money and she lent him sixty-five dollars. Magee testified that he entered and exited E.P.’s house through the front door. Ma-gee stated that he walked home from E.P.’s house and arrived at his house at around 10:15 or 10:30 p.m. Magee testified that, at around midnight, he went to his neighbor Aaron Lee Washington’s house and asked Washington for a ride to Salem to visit a friend. Washington agreed, and the two drove to the friend’s home. Ma-gee stated that he and Washington left Salem in the morning. He stated that he did not buy any cocaine that night.
¶ 10. Washington testified that he went to sleep around midnight and was awakened some time later by a visit from Ma-gee. Washington was uncertain as to the time but stated that he was sleeping deeply when awakened. Magee asked Washington for a ride to Salem. According to Washington, Magee told him that he had found a purse and that he had money with which to purchase crack cocaine from Washington. Washington stated that he sold Magee sixty dollars’ worth of crack cocaine. Then, Washington drove Magee to the friend’s house in Salem. Washington testified that, over the next few hours, Magee bought more cocaine from Washington. Washington stated that they left the house at about 5:00 a.m. and drove to the truck stop in Tylertown. There, Ma-gee bought gas. Washington thought that Magee spent a total of approximately $130 over the course of the morning. Washington further testified that he was incarcerated with Magee shortly before Magee’s trial. At that time, Washington asked Ma-gee if he had done the crime charged, and Magee responded, “Well, man, I f-d her and I had took her purse.” On rebuttal, E.P. testified that she had never had a sexual relationship with Magee, that he had not been “like family” to her, and that she did not regularly invite him to her home but had hired him on an occasional basis to perform yard work.
¶ 11. The trial court instructed the jury that it could consider Magee’s alleged purchase of crack cocaine from Washington only in considering Magee’s motive, intent, preparation, plan, knowledge, or identity as the perpetrator of the charged crimes. The jury found Magee guilty of rape and burglary but did not impose a life sentence. The court sentenced Magee as a habitual offender to consecutive sentences of thirty years for rape and twenty-five years for burglary.
LAW AND ANALYSIS
I. THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION PURSUANT TO THE INDICTMENT AND RELEVANT LAW. THE LOWER COURT ERRED IN NOT GRANTING A DIRECTED VERDICT.
¶ 12. At the close of the State’s evidence, Magee moved for a directed verdict *179 on the charges of rape and burglary. The trial court denied the motion, and Magee put on evidence in his defense. Magee argues that the denial.of a directed verdict was error because the evidence was insufficient to sustain a conviction.
¶ 13. A motion for a directed verdict or a JNOV or a request for a peremptory instruction attacks the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). When a defendant’s motion for a directed verdict is overruled at the conclusion of the State’s evidence, and the defendant then introduces evidence on his own behalf, the defendant has waived an appeal of the denial of a directed verdict. Holland v. State, 656 So.2d 1192, 1197 (Miss.1995). While Magee did not renew the motion for a directed verdict at the close of evidence or move for a JNOV, he did request a peremptory instruction, which was denied by the trial court. Magee’s request for a peremptory instruction preserved his challenge to the sufficiency of the evidence for appeal. Id.
¶ 14. When the sufficiency of the evidence is challenged on appeal, this Court reviews the trial court’s ruling as of the last occasion the sufficiency challenge was made. McClain, 625 So.2d at 778. In this case, that occasion was the trial court’s denial of Magee’s request for a peremptory instruction. In determining whether the evidence was sufficient to sustain a conviction, the relevant question is whether the evidence was such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In considering this question, we view the .evidence in the light most favorable to the prosecution. Id. We must reverse and render if the facts and inferences “point in favor of the' defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.” Id. The evidence will be found sufficient if a reasonable jury, applying the beyond a reasonable doubt- standard, might reach different conclusions on each element of the offense. Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). The jury is charged with assessing the weight and credibility of the evidence and with resolving conflicts in the evidence. Latiker v. State, 918 So.2d 68, 73(¶ 12) (Miss.2005).
¶ 15. Magee was convicted of forcible, rape, which is codified .at Mississippi Code Annotated section 97-3-65(4) (Rev. 2006), and is defined as “havfing] forcible sexual intercourse with any person.” A person may be found guilty of rape on the uncorroborated word of the victim if that testimony is not discredited or contradicted by other credible evidence. Green v. State, 887 So.2d 840, 845-46(¶ 13) (Miss.Ct.App.2004). The victim’s physical and mental condition following the incident have been accepted as corroborating evidence, including the fact that the victim immediately reported the rape. Id.
¶ 16. At the trial, Magee admitted that he had sexual intercourse with E.P), but' asserted that the sex was consensual and not forcible. On appeal, he argues that there was insufficient evidence that the sex was forcible. Magee especially points to Dr. Jordan’s testimony that, due to E.P.’s age, her vaginal injuries could have resulted from rape or from consensual sex.
¶ 17. Viewing the evidence in the light most favorable tó the verdict, there was sufficient evidence to enable a reasonable juror to have found beyond a reasonable doubt that Magee had forcible sexual in *180 tercourse with E.P. As the finders of fact, the jury was entitled to accept the testimony of E.P. and to reject that of Magee. Moore v. State, 933 So.2d 910, 922(¶ 43) (Miss.2006). E.P. testified that the sex was forcible, not consensual. Her testimony fulfilled all of the essential elements required to establish a case of forcible rape. See Otis v. State, 418 So.2d 65, 67 (Miss.1982). And, E.P.’s testimony was corroborated by her physical and mental condition and the surrounding circumstances. According to E.P.’s testimony, she called the police immediately after Ma-gee’s departure. E.P. bore injuries consistent with her allegation of having been forcibly attacked. All of the law enforcement officers and hospital personnel involved observed that E.P.’s injuries were fresh and that she was upset and anxious. And, while Dr. Jordan was unable to discern whether E.P.’s vaginal injuries were indicative of forcible sexual intercourse, Dr. Jordan never testified that her injuries were inconsistent with rape. The import of Dr. Jordan’s testimony was a matter for the jury to weigh. Moreover, the physical evidence, such as the damp sheet and Dr. Jordan’s examination of E.P., tended to show that Magee’s sexual encounter with E.P. occurred in the early morning hours of October 15, as described by E.P., and not between 8:00 p.m. and 10:30 p.m. on October 14, as Magee testified.
¶ 18. Magee also argues that the evidence of burglary of a dwelling was insufficient. Magee contends that there was no evidence of a breaking because the police were unable to determine a forcible entry point. Considering the evidence in the light most favorable to the verdict, the evidence was sufficient to enable a reasonable jury to find the elements of breaking and entering beyond a reasonable doubt. There was evidence that Magee entered an outer door and then an interior door to access E.P.’s living area. E.P. testified that both the outer door and the interior door had been locked when she went to sleep that night. Investigator Simmons testified that he determined that Magee had entered the house through a closed door on the porch leading into the apartment. Investigator Simmons found a set of keys inside the apartment that he thought Magee had found outside and used to enter the apartment door. Investigator Simmons testified that the inner door leading from the apartment into E.P.’s living area bore signs of having been forced open. He testified that when police arrived the door was ajar, the locking mechanism was in the locked position, and the latch bore fresh scratch marks. Any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking. Alford v. State, 656 So.2d 1186, 1190 (Miss.1995). Thus, the act of opening a closed, unlocked door is sufficient to establish the breaking element of burglary. Moore, 933 So.2d at 922(¶ 41). There was sufficient evidence supporting the element of breaking.
¶ 19. Magee further argues that there was no evidence that he entered E.P.’s house with the intent to commit a crime therein. Magee’s indictment charged Magee with breaking and entering E.P.’s dwelling house with the intent to steal. The evidence that Magee completed the underlying crime by taking a bag of money from EJP.’s dresser tended to show that he entered E.P.’s house with the intent to steal. Anderson v. State, 749 So.2d 283, 286(¶ 14) (Miss.Ct.App.1999). Though this point is not urged by Magee, we recognize that the testimony by E.P. that Magee stated, “I didn’t come after your money, I came after you,” tended to show that Magee broke and entered with the intent to commit rape. Whether the accused had a specific intent is a fact ques *181 tion for the jury. Duplantis v. State, 708 So.2d 1327, 1341(¶ 64) (Miss.1998). “Unless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident.” Id. at 1342(¶ 65). Notwithstanding Ma-gee’s statement to E.P., the issue of Ma-gee’s specific intent was a jury question, and the evidence surrounding Magee’s theft of the money was sufficient to enable a reasonable jury to find that Magee harbored the intent to steal when he broke and entered the residence.
II. THE LOWER COURT ERRED BY NOT DISMISSING THE INDICTMENT OR GRANTING A MISTRIAL WHEN IT ALLOWED THE TESTIMONY OF PRIOR BAD ACTS OF THE ACCUSED STEALING A CHURCH AIR CONDITIONER.
¶20. Magee called Officer Glen Allen. During direct examination, Ma-gee’s counsel questioned Officer Allen about his prior statements about the investigation. The following ensued:
Q. So in that last hearing, you did not answer or that you did not inform, in the motion hearing, provide any of this information, is that correct?
A. The last hearing, if my memory serves me correctly, it was a motion on when was Mr. Magee arrested. The last motion hearing I was involved in.
Q. And that was a suppression hearing, is that right?
A. It was one of the very first ones about was he, on the charge of an air conditioner, church burglary or was he on the charge of the actual rape case.
¶21. On cross-examination, the prosecutor asked Officer Allen: “Counsel asked you, he asked you if the defendant was being, if he was being held on the theft of the church air conditioner or the rape charge.” Before Officer Allen answered, counsel for Magee objected on the ground that he had not asked Allen on direct examination whether Magee was being held on a theft charge or a rape charge. The court agreed and sustained the objection. . Magee moved for a mistrial. The trial court denied the motion, but instructed the jury to disregard the prosecutor’s question and asked the jury if it would disregard the last question. The jury responded with a unanimous show of hands.
¶ 22., On appeal, Magee argues that the trial court’s ruling violated Mississippi Rule of Evidence 404(b), which provides that “evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” Magee did not object to the prosecutor’s question on Rule 404(b) grounds and thus this argument is procedurally barred. Rodgers v. State, 777 So.2d 673, 675-76(¶ 8) (Miss.Ct.App.2000).
¶ 23. Notwithstanding the procedural bar, this issue is without merit. Magee had already elicited from Officer Allen evidence that Magee had been charged with theft of an air conditioner. “It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial.” Hobson v. State, 730 So.2d 20, 25 (Miss.1998). Because Officer Allen never answered the State’s question about the charge, no additional evidence concerning the air conditioner theft charge was brought out by the State. As for any prejudice from the State’s question itself, the trial court instructed the jury to disregard the State’s question, and it is presumed that the jury follows the instructions of the trial court. Id. Magee has failed to show error.
*182 III. THE COURT SHOULD HAVE GRANTED THE MOTION TO DISQUALIFY THE DISTRICT ATTORNEY.
¶ 24. The Walthall County district attorney was one of two prosecutors who participated in Magee’s trial. Prior to the trial, on July 7, 2003, Magee filed a motion to disqualify the district attorney on the ground that Magee’s counsel had initiated a civil rights lawsuit on behalf of another client against the district attorney in federal court. Magee asserts that the case was pending at the time of Magee’s trial, and argues that the district attorney should have been disqualified due to concern over any conduct which could erode public confidence in the judicial system.
¶ 25. Magee’s motion to disqualify the district attorney and the State’s response to his motion appear in the record. A pre-trial hearing occurred on August 1, 2003, during which Magee brought several of his motions to the attention of the trial court but did not raise the motion to disqualify the district attorney. Magee has not directed this Court to the trial court’s ruling on the motion. If Magee ever obtained a ruling on the motion from the lower court, the ruling is not apparent from the record on appeal. It is the mov-ant’s responsibility to obtain a ruling on a motion from the trial court, and the mov-ant’s failure to pursue a ruling on a motion constitutes a waiver. Byrom v. State, 863 So.2d 836, 851(¶ 27) (Miss.2003). By failing to pursue a ruling on the motion from the trial court, Magee abandoned the motion and waived this issue for appeal.
IV. THE TRIAL COURT ERRED BY NOT EXCUSING A JUROR WHO READ A NEWSPAPER ARTICLE RELATED TO THE CASE.
¶ 26. On the morning of the third day of trial, the court informed the jury that a newspaper article about the case had appeared in the Enterprise-Journal, a MeComb, Mississippi newspaper. The court noted that it had neglected to instruct the jury the previous day not to read any newspaper coverage of the case. One juror, Juror Wallace, admitted to having read the article, and Magee moved to dismiss the case. The court indicated that it would revisit the matter at the conclusion of cross-examination of a witness.
¶ 27. Later that day, out of the presence of the other jurors, the court instructed Juror Wallace not to discuss the article with the other jurors and allowed the prosecutor and Magee’s counsel to thoroughly question Juror Wallace about the article. Juror Wallace stated that he had skimmed part of the article and did not learn anything about the case that he had not already learned during the proceedings. Juror Wallace stated that he had read about the venire and the composition of the jury that was selected. Juror Wallace stated that he did not read anything about Magee or Magee’s defense. He also stated that the article had not helped him understand the case and that he could remain fair and impartial to both Magee and the State. After the questioning of Juror Wallace, Magee moved to have the article made a part of the record. Then, the trial proceeded.
¶ 28. On appeal, Magee argues that the trial court’s failure to excuse Juror Wallace constituted reversible error. The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to a fair trial before an impartial jury. Earley v. State, 595 So.2d 430, 431 n. 1 (Miss.1992). “The- judicial determination of whether a juror is fair and impartial will not be set aside unless such determination is clearly wrong.” Smith v. State, 802 So.2d 82, 86(¶ 15) (Miss.2001).
*183 ¶ 29. Magee relies upon Earley in arguing that the trial court abused its discretion in failing to dismiss Juror Wallace. In Earley, the trial court, before adjourning the trial for the day, forgot to instruct the jury not to read anything about the case. Earley, 595 So.2d at 431. The next day an article about the case appeared on the front page of the newspaper. Id. While the first page of the article contained information to which the jury had been exposed during the trial, the second page of the article contained information about proceedings held outside the jury’s presence. Id. The trial court polled the jury about the article. Id. One juror had read only the article’s headline. Id. Three jurors admitted to having “seen,” “glanced at,” or “skimmed” the article. Id. These three jurors stated that they could be fair and impartial. Id. The court questioned all four jurors further and determined that only one juror had read the second page of the article. Id. The court excused that juror, and the other three were allowed to remain. Id.
¶ 30. Earley moved for a mistrial, which was denied by the trial court. Id. at 432. On appeal, the supreme court affirmed. Id. The court found that the court properly dismissed the juror who had read the second page of the article and that there was no showing that the other three jurors had been exposed to information they had not previously received during the trial. Id. As in Earley, in this case, the court’s inquiry revealed that Juror Wallace had not received any information from the article which he had not already received during the voir dire proceedings. Juror Wallace stated that he remained fair and impartial and would not discuss the article with the other jurors. The trial court’s failure to excuse Juror Wallace was not clearly wrong.
V. WHETHER MAGEE WAS INDICTED UNDER THE WRONG STATUTE.
¶ 31. Count Two of Magee’s indictment set out the essential elements of forcible rape as codified at Mississippi Code Annotated section 97-3-65(4)(a) (Rev.2006). However, the indictment erroneously cited to section 97-3-65(3), which contains the sentencing for statutory rape, rather than section 97-3-65(4)(a), which codifies the crime of forcible rape. For the first time on appeal, Magee argues that the indictment’s citation to the wrong statutory subsection mandates reversal.
¶ 32. This issue was decided adversely to Magee in Culp v. State, 933 So.2d 264, 277-78 (Miss.2005). Culp’s indictment charged him with violating subsection -97-3-64(3) but set out the essential elements of forcible rape. Id. at 277(¶ 40). Culp initially raised the error on appeal. Id. at 278(¶42). The supreme court observed that the purpose of an indictment is to afford the defendant with notice of the crime charged and the facts underlying the crime charged. Id. at 277(¶ 40). Citation to a specific statute is not required to afford adequate notice to the defendant. Id. At the trial, Culp had confronted the charges of forcible rape and not those of statutory rape. Id. at 277(¶41). Therefore, Culp had been adequately apprised of the charges against him and the' court treated the citation to the incorrect subsection as a typographical error that was a matter of form, not substance. Id. at 277-78 (¶¶ 40-42). Pursuant to Culp, this issue is without merit.
VI. THE COURT ERRED BY NOT DISMISSING THE INDICTMENT FOR FAILURE TO COMPLY WITH RULE 6.03.
¶33. ■ Magee was questioned at the police station the day after the rape. A warrant' for a blood sample from Magee was issued on October 16, 2002. Magee *184 was indicted for rape and burglary on February 3, 2008. In a cursory argument, Magee contends that during the police questioning he was held in jail for forty-eight hours without an initial appearance in violation of Uniform Rule of Circuit and County Court 6.03. Magee alleges that during his time in jail he was questioned, required to give a DNA sample, and denied his right to counsel.
¶ 34. Rule 6.03 provides that persons in custody shall be taken without unnecessary delay and within forty-eight hours of arrest before a judicial officer or another authorized person for an initial appearance. At the initial appearance, the judicial officer or other authorized person shall, among other tasks, advise the accused of his rights, amend the formal charge if necessary, inform the defendant of the formal charge, and ascertain that probable cause existed for an arrest made without a warrant. URCCC 6.03. Even if an initial appearance occurred within forty-eight hours of arrest, “a defendant’s constitutional rights have been violated if he can show that the hearing was delayed for an impermissible purpose, such as ‘gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay’s sake.’ ” Wilson v. State, 923 So.2d 1039, 1042(¶ 10) (Miss.Ct.App.2005) (quoting County of Riverside v. McLaughlin, 500 U.S. 44, 66, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)).
¶ 35. In Magee’s argument, he fails to cite to the record or explain how his argument is' supported by the record. The following is the evidence pertaining to Ma-gee’s arrest that the Court has located in the record. Officer Stacey Cotten testified in a proffer that when Magee was questioned about the rape and burglary Magee had been arrested and held on church burglary and possession of stolen property charges. There was a discussion between the court and counsel which indicated that the police questioned Magee about the rape and burglary while Magee was being held on other charges and that Magee was afforded a timely preliminary hearing on those charges. There is an order denying Magee’s motion to dismiss for lack of a timely initial appearance on the rape and burglary charges. The order does not provide further facts or explain why the motion was denied. Magee has provided in~ adequaté argument supported by citations to the record to establish a violation of the initial appearance rule.
VII. WHETHER THE SENTENCE WAS TANTAMOUNT TO A LIFE SENTENCE AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AND IS DISPROPORTIONATE UNDER THE EIGHTH AMENDMENT.
¶ 36. Magee argues that his consecutive sentences of thirty years for rape and twenty-five years for burglary to be served as a habitual offender are grossly disproportionate to the crimes and constitute cruel and unusual punishment in violation of the Eighth Amendment. Sentencing is generally within the discretion of the trial judge. White v. State, 742 So.2d 1126, 1136(¶ 41) (Miss.1999). As a general rule, a sentence that does not exceed the statutory maximum for the crime will not be disturbed on appeal. Nichols v. State, 826 So.2d 1288, 1290(¶10) (Miss.2002). But, when a threshold comparison of the crime to the sentence leads to an inference of “gross disproportionality,” the reviewing court will conduct a proportionality analysis using the three factors from Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Hoops v. State, 681 So.2d 521, 538 (Miss.1996) (citing Harmelin v. Michigan, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). These factors include: (1) the gravity of the offense and the harshness of the penalty, (2) a comparison with the *185 sentences imposed on other criminals in the same jurisdiction, and (3) a comparison with the sentences imposed for commission of the same crime in other jurisdictions. Solem, 463 U.S. at 291-92, 103 S.Ct. 3001.
¶ 37. Magee argues that his sentence was grossly disproportionate to his crimes. Magee also complains that, given his age at sentencing, his punishment amounted to a life sentence. The court sentenced Magee as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2000), which provides for a sentence of “the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.” For the rape conviction, the jury did not fix the penalty at life imprisonment, requiring the trial court to fix the penalty “at any term as the court, in its discretion, may determine.” Miss.Code Ann. § 97-3-65(4)(a) (Rev. 2006). The court imposed a thirty-year term. The court imposed a consecutive twenty-five year sentence, the maximum penalty for burglary of a dwelling. Miss. Code Ann. § 97-17-23 (Rev.2006). Thus, the trial court imposed sentences within the statutory limits for Magee’s crimes. When a series of sentences is imposed, the total of the sentences may exceed the defendant’s actuarial life expectancy. Erwin v. State, 557 So.2d 799, 803 (Miss.1990). We find that a threshold comparison of Magee’s sentence with his crimes does not raise an inference of gross disproportionality that would trigger the Solem proportionality analysis.
VIII. THE LOWER COURT ERRED BY ALLOWING THE STATE TO INTRODUCE EVIDENCE OF A CONVICTION THAT WAS OVER TEN YEARS OLD.
¶ 38. Magee’s sister, Betty Walker, testified on behalf of Magee. On direct examination, Walker stated that she had been close with Magee since childhood. She opined that Magee was a good, honest person who had never been violent and had never been in trouble with the law. The State sought to cross-examine Walker with evidence of Magee’s convictions in 1997 for conspiracy to distribute cocaine and in 1980 for possession of stolen property.
¶ 39. Pursuant to Mississippi Rule of Evidence 405, the trial court permitted the State, over Magee’s objection, to ask Walker whether she was aware of each conviction. Accordingly, the State asked Walker whether she was aware that Ma-gee had been convicted in 1980 of receiving stolen property; Walker said she had been unaware of that conviction. Walker admitted that she did know of Magee’s 1997 conviction for conspiracy to distribute cocaine. Later, Magee’s counsel elicited testimony from Magee concerning the 1980 conviction and the State put on rebuttal evidence.
¶ 40. On appeal, Magee argues that the 1980 conviction was inadmissible under Mississippi Rule of Evidence 609 because the conviction was over ten years old. The methods of proving character are governed by Mississippi Rule of Evidence 405. Rule 405(a) provides: “In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.” Pursuant to Mississippi Rule of Evidence 404(a)(1), the accused may offer evidence of his own pertinent character trait. If the accused opens the door by presenting evidence of his character as a good and law-abiding citizen, then the *186 prosecution is entitled to “rebut the same.” M.R.E. 404(a)(1); Booker v. State, 745 So.2d 850, 853(¶ 8) (Miss.Ct.App.1999). A prior conviction is a specific act of conduct that is admissible to rebut the accused’s evidence that he is a peaceable, law-abiding citizen. Booker, 745 So.2d at 853(¶ 8). A prior conviction is admissible to rebut the accused’s evidence of his peaceable, law-abiding character even though the conviction would not be admissible for credibility impeachment under Rule 609. Id. at 853(¶ 7).
¶ 41. In this case, Magee’s counsel elicited testimony from Walker indicating that Magee was a peaceable, law-abiding citizen. The prosecution was entitled to rebut Walker’s testimony about Magee’s peaceful and law-abiding character with evidence of Magee’s 1980 conviction for possession of stolen property. The trial court’s admission of the conviction was not an abuse of discretion.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION OF COUNT I OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS, AND COUNT II OF RAPE AND SENTENCE OF THIRTY YEARS, WITH SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND AS A HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALT-HALL COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.

. We have changed the victim’s name to protect her privacy.